UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-10810-RGS

DAVID AMBROSE

v.

BOSTON GLOBE MEDIA PARTNERS LLC

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

September 19, 2022

STEARNS, D.J.

Defendant Boston Globe Media Partners LLC (the Globe) seeks dismissal of David Ambrose's First Amended Complaint (FAC), a putative class action suit alleging that the Globe disclosed his personally identifiable information (PII) – and the PII of other digital Globe subscribers – to Facebook in violation of the Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710. For the reasons that follow, the court will deny the Globe's motion.

## BACKGROUND

The Globe, a self-described "multimedia organization that provides news, entertainment, and commentary across multiple brands and platforms," maintains a website (bostonglobe.com) that features "national

and local content" including "news articles, photographs, images, illustrations, audio clips and video clips." FAC (Dkt # 22) ¶¶ 8-9. Indeed, the Globe "creates, hosts, and disseminates hundreds, if not thousands, of videos" for various purposes – "as stand-alone content, as supplements to articles, and as content sponsored by advertisers." *Id.* ¶¶ 10-11. To access the Globe's video content, individuals must pay for a digital subscription. *Id.* ¶¶ 14, 16.

Ambrose alleges that the Globe discloses digital subscribers' PII to Facebook without the subscribers' permission. *Id.* ¶ 20. Specifically, Ambrose claims that the Globe website hosts the Facebook Tracking Pixel – a piece of code that "tracks the people and type of actions they take" by capturing a digital subscriber's action and sending a record of that action to Facebook. *Id.* ¶¶ 25, 28. The record includes the webpage that the subscriber visited, the title and description of the webpage, and the number of times the subscriber views the associated video. *Id.* ¶¶ 28-32. Further, a subscriber who is logged into Facebook while watching a video on the Globe website will transmit a c:\user folder ("cookie") – that contains that visitor's unencrypted Facebook ID. *Id.* ¶ 33. "Anyone can identify a Facebook profile – and all personal information publicly listed on that profile – by appending the Facebook ID to the end of Facebook.com." *Id.* ¶ 42. The Globe also uses

Facebook's "Advanced Matching" tool, which transmits "a subscriber's email address, first name, last name, telephone number, and mailing address" to Facebook. *Id.* ¶ 47.

Ambrose, who has been a Facebook user since 2005, purchased a digital subscription to the Globe's website in August of 2020. *Id.* ¶ 59. According to Ambrose, the Globe has – using Facebook's Tracking Pixel and Advanced Matching tools – disclosed Ambrose's Facebook ID, email address, first name, last name, and mailing address to Facebook, as well as information about the videos Ambrose has accessed on the Globe website. *Id.* ¶¶ 61-66.

## DISCUSSION

"The sole inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 7 (1st Cir. 2011). In most circumstances, the plaintiff need not demonstrate a "heightened fact pleading of specifics," but rather must present "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

3

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, facts that are "merely consistent with" a defendant's liability are inadequate. *Id.* Further, the recitation of the elements of a claim, "supported by mere conclusory statements," is insufficient to establish facial plausibility. *Id.*

In 1988, Congress passed the VPPA "after the *Washington City Paper* published Supreme Court nominee Robert Bork's video rental history. The paper had obtained (without Judge Bork's knowledge or consent) a list of the 146 films that the Bork family had rented from a Washington, D.C.-area video store." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016) (internal quotations omitted). The Senate Report explaining the passage of the VPPA states that Congress's intent was "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." S. Rep. No. 100-599, at 1 (1988), reprinted in 1988 U.S.C.C.A.N. 4342-1.

To state a claim under the VPPA, "a plaintiff must allege that '[a] video tape service provider . . . knowingly disclose[d], to any person, personally identifiable information concerning any consumer of such provider.'" *In re Nickelodeon*, 827 F.3d at 279, quoting 18 U.S.C. § 2710(a)(4). The VPPA defines a "video tape service provider" as "any person, engaged in the

4

business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials." 18 U.S.C. § 2710(a)(4). "Personally identifiable information," or PII, is defined as "includ[ing] information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *Id.* § 2710(a)(3). Finally, a "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1).

On its face, "construing the well-pleaded facts of the [FAC] in the light most favorable to" Ambrose, *Ocasio-Hernandez*, 640 F.3d at 7, Ambrose's VPPA claim plausibly states a claim for relief. The FAC alleges that the Globe is engaged in the business of delivering various types of video content to its digital subscribers. Further, Ambrose claims that the Globe knowingly disclosed his PII (and the PII of other digital subscribers) to Facebook – namely, his Facebook ID, email address, first name, last name, mailing address, and information about what videos he has watched on the Globe website – through its use of Facebook's Tracking Pixel and Advanced Matching tools. Finally, Ambrose and other digital subscribers of the Globe's video and other multimedia services are plausibly consumers as defined by the VPPA.

The Globe's arguments in favor of dismissal rely on factual disputes that are not appropriate for disposition at this early stage. "Although one could imagine a different conclusion at summary judgment once the evidence is examined, it is plausible to conclude from these . . . allegations that [the Globe] engages in the business of delivering audio visual materials, and that its business is 'significantly tailored to serve that purpose.'" *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019), quoting *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017). Similarly, although it is conceivable that after discovery it will become apparent that the Globe does not (as it maintains) transmit its digital subscribers' PII to Facebook in the manner Ambrose has alleged, at this juncture Ambrose has done enough to state a viable VPPA claim.

## ORDER

For the foregoing reasons, the Globe's motion to dismiss is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE