# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DAVID AMBROSE, individually and on behalf of all others similarly situated,

                Plaintiff,

v.

BOSTON GLOBE MEDIA PARTNERS, LLC,

                Defendant.

Civil Action No. 1:22-cv-10195-RGS

Hon. Richard G. Stearns

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ASSENTED TO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Dated:  May 19, 2023

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*Pro Hac Vice*)
Philip L. Fraietta (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jarisohn@bursor.com
          pfraietta @bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly (*Pro Hac Vice*)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
Email:    creilly@bursor.com

*Proposed Class Counsel*

**BIRNBAUM & GODKIN, LLP**
David S. Godkin (BBO#196530)
James E. Kruzer (BBO#670827)
1 Marina Park Drive, Suite 1410
Boston, MA 02210
Telephone:  (617) 307-6100
Email:    godkin@birnbaumgodkin.com
          kruzer@birbnaumgodkin.com

*Local Counsel for Plaintiff and the Proposed Settlement Class*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................................ 1

I.    FACTUAL AND PROCEDURAL BACKGROUND................................................ 3

    A.    Factual Background ............................................................................... 3

    B.    Procedural History ................................................................................ 4

    C.    History of Settlement Discussions ........................................................ 4

II.    KEY TERMS OF THE SETTLEMENT ............................................................... 5

    A.    Class Definition ..................................................................................... 5

    B.    Monetary Relief In The Form Of A Non-Reversionary Common
        Fund ...................................................................................................... 6

    C.    In Kind Relief ....................................................................................... 7

    D.    Prospective Relief ................................................................................. 7

    E.    Release .................................................................................................. 7

    F.    Notice And Administration Expenses .................................................... 8

    G.    Incentive Award .................................................................................... 8

    H.    Attorneys' Fees And Expenses .............................................................. 8

ARGUMENT .................................................................................................................... 8

I.    THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR
    PURPOSES OF SETTLEMENT ........................................................................ 8

    A.    General Standards ................................................................................. 8

    B.    Numerosity Is Satisfied ......................................................................... 9

    C.    Commonality Is Satisfied ..................................................................... 10

    D.    The Class Representative's Claims Are Typical Of The Class .............. 11

    E.    Rule 23(a)(4) and Rule 23(g) Are Satisfied Because Class
        Representative And Class Counsel Will Fairly and Adequately
        Protect The Class' Interests ................................................................. 12

    F.    The Requirements Of Rule 23(b)(3) Are Satisfied ............................... 13

        1.    Common Issues Predominate ..................................................... 13

        2.    Class Settlement Is Superior To Alternate Methods of
            Adjudication ............................................................................... 14

        3.    The Court Should Appoint Plaintiff As Class
            Representative And Proposed Class Counsel As Class
            Counsel Under Rule 23(g) ......................................................... 15

II.    THE PROPOSED SETTLEMENT IS PRESUMPTIVELY FAIR AND
    SHOULD BE PRELIMINARILY APPROVED UNDER RULE 23(E)............................ 15

    A.    The Settlement Is Presumptively Fair And Should Be Preliminarily
        Approved ............................................................................................. 16

B.      The Settlement Is Based On Arm's Length Negotiations
        Conducted After Extensive Investigation And The Exchange Of
        Ample Information ................................................................................ 17

C.      Counsel Is Highly Experienced In Similar Litigation And Its
        Considered Opinion Regarding The Settlement Is Entitled To
        Significant Weight ................................................................................ 18

D.      The Settlement Falls Well Within The Range Of Possible
        Approval ................................................................................................ 18

III.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ....................... 19

A.      The Content Of The Proposed Class Notice Complies With Rule
        23(c)(2) .................................................................................................. 19

B.      The Plan For Distribution Of The Class Notice Will Comply With
        Rule 23(c)(2) ......................................................................................... 20

CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..................................................................................................... 8, 14

*Applegate v. Formed Fiber Techs., LLC,*
    2012 WL 3065542 (D. Me. July 27, 2012)................................................................. 10

*Belezos v. Bd. of Selectmen of Hingham, Massachusetts,*
    2019 WL 6358247 (D. Mass. Nov. 27, 2019) ............................................................ 9, 10

*Bertella v. JetDirect Aviation, Inc.,*
    2010 WL 4103664 (D. Mass. Oct. 19, 2010)............................................................. 9, 11, 12, 13

*Bezdek v. Vibram USA Inc.,*
    79 F. Supp. 3d 324 (D. Mass. 2015) ......................................................................... 16, 18,17

*Bishop-Bristol on behalf of Arthur J. Gallagher & Co. 401(k) Sav. & Thrift Plan v.*
    *Massachusetts Mut. Life Ins. Co.,*
    2019 WL 1501581 (D. Mass. Feb. 5, 2019) .............................................................. 2, 8

*Coulter-Owens v. Time, Inc.,*
    308 F.R.D. 524 (E.D. Mich. 2015) ............................................................................ 11

*Del Sesto v. Prospect Chartercare, LLC,*
    2019 WL 2162083 (D.R.I. May 17, 2019) ................................................................. 16, 18

*Faherty v. CVS Pharmacy, Inc.,*
    2011 WL 810178 (D. Mass. Mar. 9, 2011)................................................................. 9, 10, 12

*García-Rubiera v. Calderón,*
    570 F.3d 443 (1st Cir. 2009)...................................................................................... 9

*Hochstadt v. Boston Scientific Corp.,*
    708 F. Supp. 2d 95 (D. Mass. 2010) .......................................................................... 16

*In re Google LLC Street View Elec. Commc'ns Litig.,*
    2020 WL 1288377 (N.D. Cal. Mar. 18, 2020).......................................................... 2

*In re Lupron Mktg. & Sales Pracs. Litig.,*
    345 F. Supp. 2d 135 (D. Mass. 2004) ........................................................................ 8, 16

*In re Lupron Mktg. & Sales Pracs. Litig.,*
    228 F.R.D. 75 (D. Mass. 2005).................................................................................. 10, 13

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.,*
    270 F.R.D. 45 (D. Mass. 2010).................................................................................. 16

*In re Nexium Antitrust Litig.*,
   777 F.3d 9 (1st Cir. 2015) ................................................................. 13

*In re P.R. Cabotage Antitrust Litig.*,
   269 F.R.D (D. P.R. 2010). .................................................................. 14

*In re Prudential Insur. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) ......................................................... 14

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   2017 WL 4621777 (D. Mass. Oct. 16, 2017) .................................... 15

*In re: Vizio, Inc., Consumer Privacy Litig.*,
   2019 WL 12966638 (C.D. Cal. July 31, 2019) .................................... 2

*Kinder v. Meredith Corp.*,
   2016 WL 454441 (E.D. Mich. Feb. 5, 2016) ................................ 11, 14

*Lane v. Facebook, Inc.*,
   2010 WL 9013059 (N.D. Cal. Mar. 17, 2010) .................................. 2, 3

*Lazar v. Pierce*,
   757 F.2d 435 (1st Cir. 1985) ........................................................ 2, 15

*Ouadani v. Dynamex Operations E., LLC*,
   405 F. Supp. 3d 149 (D. Mass. 2019) ................................... 10, 11, 12

*Roberts v. TJX Cos., Inc.*,
   2016 WL 8677312 (D. Mass. Sept. 30, 2016) ................................... 17

*Robinson v. Nat'l Student Clearinghouse*,
   14 F.4th 56 (1st Cir. 2021) ................................................................ 16

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass. 2000) ........................................................... 18

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ...................................................................... 13

**STATUTES**

18 U.S.C. § 2710 .................................................................................... 1

28 U.S.C. § 1715 .................................................................................. 20

**RULES**

Fed. R. Civ. P. 23 ............................................................................. 2, 20

Fed. R. Civ. P. 23 (a) ....................................................................... 9, 10

Fed. R. Civ. P. 23 (a)(3) ........................................................................................ 12

Fed. R. Civ. P. 23 (a)(4) .................................................................................... 12, 13

Fed. R. Civ. P. 23(b)(3) ............................................................................. 3, 9, 13, 14

Fed. R. Civ. P. 23 (c)(2) .................................................................................... 19, 20

Fed. R. Civ. P. 23 (c)(2)(B) ............................................................................... 19, 20

Fed. R. Civ. P. 23 (c)(3) ........................................................................................ 19

Fed. R. Civ. P. 23 (e) ....................................................................................... 15, 16

Fed. R. Civ. P. 23(e)(1) ........................................................................................... 9

Fed. R. Civ. P. 23 (e)(2) ......................................................................................... 16

Fed. R. Civ. P. 23 (g) ................................................................................... 12, 13, 15

Fed. R. Civ. P. 26 ..................................................................................................... 4

## OTHER AUTHORITIES

C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123-124 (3d ed. 2005) ............................................................................................................... 13

## **INTRODUCTION**

In this putative class action, Plaintiff David Ambrose ("Plaintiff") alleges that Defendant Boston Globe Media Partners, LLC ("Defendant") violated the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA") by installing and running the Facebook Tracking Pixel on its website, thereby causing its subscribers' personally identifiable information – which the VPPA defines as including information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider – to be disclosed to Facebook.  Although dozens of similar cases have since been filed across the country, this case was the first ever Facebook Tracking Pixel-based VPPA case, thus pioneering the field.

This Settlement[1] negotiated by Plaintiff and Proposed Class Counsel represents an excellent result for the proposed Settlement Class.  Pursuant to the Settlement Agreement, Defendant has agreed to establish a $4,000,000 all-cash, non-reversionary Settlement Fund, from which each Settlement Class Members who files a valid Claim Form will be entitled to a *pro rata* share, which, assuming a claims rate of 10%-20%, will amount to payments of approximately $22-$44 to each Settlement Class Member, after costs and any fees are deducted. Additionally, Defendant has agreed to provide up to $1,000,000 of In Kind Relief, which will consist of an extension of any existing digital subscription to the *Boston Globe* for a maximum of seven days past its current expiration date for no additional payment.  And equally important, Defendant has agreed to meaningful prospective relief as it will suspend operation of the Facebook Tracking Pixel on any pages on its website that both include video content and have a URL that substantially identifies the video content viewed, unless and until the VPPA is amended, repealed, or otherwise invalidated, or until Defendant obtains VPPA-compliant consent for the disclosure of the video content viewed to Facebook.

---

[1] Unless otherwise indicated, all capitalized terms herein have the same meaning as ascribed to them in the "Definitions" section of the Settlement Agreement.

The Settlement is a product of a thorough pre-filing investigation, efficiently prosecuted litigation, and extensive arm's-length negotiations between the Parties, including a mediation with The Honorable Frank Maas (Ret.) – formerly of the Southern District of New York and now a mediator at JAMS (New York).  The Settlement provides fair, reasonable, and adequate relief to the Settlement Class, and its terms and notice procedures readily satisfy Due Process and the procedural requirements of Fed. R. Civ. P. 23.

The Court need not evaluate the Settlement in a vacuum, however, since it vastly outperforms the VPPA settlements and many other privacy settlements that came before it.  *See, e.g.*, *Lane v. Facebook, Inc.*, 2010 WL 9013059 (N.D. Cal. Mar. 17, 2010), *aff'd* 696 F.3d 811 (9th Cir. 2012) (approving settlement in VPPA case that only provided *cy pres* relief with no monetary relief to Settlement Class Members); *In re: Vizio, Inc., Consumer Privacy Litig.*, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (approving settlement in VPPA case that provided each claimant with an estimated $16.50 at a claims rate of 4.1%); *In re Google LLC Street View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA, dkts. 350, 369 (N.D. Cal. May 6, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach).

The strength of this Settlement speaks for itself, and the Court should have no hesitation granting it preliminary approval in accordance with the First Circuit's "strong policy in favor of encouraging settlements," *Bishop-Bristol on behalf of Arthur J. Gallagher & Co. 401(k) Sav. & Thrift Plan v. Massachusetts Mut. Life Ins. Co.*, 2019 WL 1501581, at *5 (D. Mass. Feb. 5, 2019), "particularly where class actions are involved."  *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985).  Accordingly, Plaintiff respectfully requests that the Court (1) grant preliminary

approval of the Settlement Agreement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Philip L. Fraietta, Joshua D. Arisohn, and Christopher R. Reilly of Bursor & Fisher, P.A. as Class Counsel; (4) appoint David Ambrose as Class Representative for the Settlement Class; and (5) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice"),[2] and direct distribution of the Proposed Notice.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background

Plaintiff alleges that Defendant is a " 'multimedia organization that provides news, entertainment, and commentary across multiple brands and platforms.' " (ECF No. 22) (the "FAC") ¶ 8 (quoting Defendant's press release). According to Plaintiff, Defendant's website, bostonglobe.com, features "national and local content daily," including "news articles, photographs, images, illustrations, audio clips and video clips." *Id.* ¶ 9. Plaintiff further alleges that Defendant incorporates the code for the Facebook Tracking Pixel on its website, which, when activated " 'tracks the people and type of actions they take.' " *Id.* ¶ 25 (quoting Facebook's documentation). According to Plaintiff, when a visitor navigates to bostonglobe.com, Defendant transmits certain event data to Facebook "permit[s] an ordinary person to identify what video an individual has watched." *Id.* ¶ 32. Plaintiff further alleges that Defendant sends this data to Facebook alongside the c_user cookie, which contains an "unencrypted Facebook ID." *Id.* ¶ 33. 47. Thus, Plaintiff alleges that Defendant "knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior." *Id.* ¶¶ 52-55. Defendant has denied, and continues to deny, many of these allegations.

---

[2] These are attached as Exhibits A-D to the Settlement Agreement.

### B.       Procedural History

Plaintiff filed his Amended Complaint on May 20, 2022, which is the operative complaint in this matter.  ECF No. 22.  On June 21, 2022, Defendant filed a motion to dismiss Plaintiff's Amended Complaint, which was accompanied by a 20-page memorandum of law. ECF No. 25.  On July 19, 2022, Plaintiff filed his opposition to Defendant's motion to dismiss, which comprised of a 19-page memorandum of law.  ECF No. 28.  On August 17, 2022, Defendant filed its reply memorandum of law in support of its motion to dismiss.  ECF No. 29. The issues briefed in the motion to dismiss were novel.  Indeed, at the time, no court had ever addressed a motion to dismiss a Facebook Tracking Pixel-based VPPA case.  Declaration of Philip L. Fraietta In Support of Plaintiff's Assented to Motion for Preliminary Approval of Class Action Settlement ("Fraietta Decl.") ¶ 5.

On September 19, 2022, this Court issued a Memorandum and Order denying Defendant's motion to dismiss.  ECF No. 31.  On October 12, 2022, Defendant answered the Amended Complaint by denying the allegations generally and raising nine affirmative defenses. ECF No. 36.  Thereafter, the Parties engaged in written and document discovery, which included meet-and-confer conferences, and exchanged initial disclosures pursuant to Rule 26.  *See* Fraietta Decl. ¶ 14.

### C.       History of Settlement Discussions

Mindful that, as with any litigation, there is significant risk to both sides, from the outset of the case, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution.  Fraietta Decl. ¶ 15.  Those discussions led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before Judge Maas.  Fraietta Decl. ¶ 16.  The Parties stipulated to stay the case pending the mediation and the Court granted that stipulation on January 18, 2023.  ECF No. 39.

In advance of the mediation, the Parties exchanged informal discovery, including on the size of the potential class.  Fraietta Decl. ¶ 18.  The parties also exchanged detailed mediation statements, airing their respective legal arguments and theories on potential damages.  *Id.*  Given that this information was the same or largely similar to discovery that would be produced in formal discovery related to class certification and summary judgment, the Parties were able to sufficiently assess the strengths and weaknesses of their cases.  *Id.* ¶ 19.

On February 8, 2023, the Parties participated in a mediation before Judge Maas.  Fraietta Decl. ¶ 20.  While the Parties engaged in good faith negotiations, which at all times were at arms' length, they failed to reach an agreement that day.  *Id.*  However, because the Parties felt they had made progress, they stipulated to extend the stay to continue their mediation efforts, which the Court granted.  ECF Nos. 41, 43, 45.  Over the next several weeks, the Parties engaged in additional rounds of arms' length negotiations facilitated by Judge Maas, and, on March 31, 2023, reached agreement on all material terms of a class action settlement and executed a term sheet.  Fraietta Decl. ¶ 21; *see also* ECF No. 46.

## II.   KEY TERMS OF THE SETTLEMENT

The key terms of the Class Action Settlement Agreement ("Settlement"), attached to the Fraietta Declaration as Exhibit 1, are briefly summarized as follows:

### A.   Class Definition

The "Settlement Class" or "Settlement Class Members" is defined as:

> [A]ll persons in the United States who, from February 5, 2020, to and through the Preliminary Approval date: (1) have or had a Facebook account; (2) also had a digital subscription to the *Boston Globe*, or a home delivery subscription to the *Boston Globe* that includes digital access; and (3) who viewed videos on Boston Globe's website while their Facebook membership was active.[3]

---

[3] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and

Settlement ¶ 1.30.

### B.     Monetary Relief In The Form Of A Non-Reversionary Common Fund

Pursuant to the Settlement, Defendant will establish a non-reversionary cash Settlement Fund in the amount of $4,000,000.   Settlement ¶ 1.32.   Settlement Class Members will be entitled to submit claims against the Settlement Fund.  *Id.* ¶ 2.1.  All Settlement Class Members who submit a valid claim will be entitled to a *pro rata* portion of the Settlement Fund after payment of Settlement Administration Expenses, attorneys' fees and costs, and any incentive award, if approved by the Court.  *Id.*  Assuming a 10-20% claims rate,[4] Proposed Class Counsel estimates that each claiming Settlement Class Member will receive a net payment of $22-$44.

Any uncashed checks or electronic payments unable to be processed within 180 days of issuance shall revert to the Settlement Fund, to be distributed *pro rata* to claiming Settlement Class Members, if practicable.   *Id.* ¶ 2.1(e).  If such a secondary distribution would result in Settlement Class Members receiving less than $5.00, or if a secondary distribution would be otherwise infeasible, any uncashed funds shall, subject to Court approval, revert to the American Civil Liberties Union, a non-sectarian, not-for-profit organization, or another non-sectarian, not-for-profit organization(s) recommended by Class Counsel and approved by the Court.  *Id.*

---

their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

[4] This estimated claims rate is well above typical claims rate in class action settlements.  *See* Fed. Trade Comm'n, Administration of Settlements in CONSUMERS AND CLASS ACTIONS: A RETROSPECTIVE AND ANALYSIS OF SETTLEMENT CAMPAIGNS 11 (2019) (finding the weighted mean claims rate was 4%).  However, recent settlements under Michigan's state analog to the VPPA (in which Proposed Class Counsel were Class Counsel) saw similar claims rates.  *See, e.g.*, *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444, ECF No. 111 (S.D.N.Y. Dec. 4, 2018) (16.8% claims rate); *Moeller v. Am. Media, Inc.*, No. 16-cv-11367, ECF No. 42 (E.D. Mich. Sept. 28, 2017) (10% claims rate).  Thus, Proposed Class Counsel believes this estimate is reasonable and attainable.  Of course, given the *pro rata* nature of the settlement payments, a lower claims rate will result in higher per claimant payouts.

### C.     In Kind Relief

In addition to the monetary relief described above, Defendant will also provide up to $1,000,000 of In Kind Relief, in the form of an extension of any existing digital subscription to the *Boston Globe* of whatever type enjoyed by the claiming Settlement Class Member for a maximum of 7 days past its current expiration date for no additional payment.  *Id.* ¶ 1.16. Settlement Class Members will have the ability to select In Kind Relief in addition to a monetary payment, or as a stand-alone remedy.  *Id.* ¶ 2.1(b).

### D.     Prospective Relief

As part of the Settlement, within 45 days of the Preliminary Approval Order, Defendant will also agree to suspend operation of the Facebook Tracking Pixel on any pages on its website that both include video content and have a URL that substantially identifies the video content viewed, unless and until the VPPA is amended, repealed, or otherwise invalidated (including by judicial decision on the use of website pixel technology by the United States Supreme Court, any federal court of appeals, a U.S. federal district court in Massachusetts, or a Massachusetts state court of general jurisdiction), or until Defendant obtains VPPA-compliant consent for the disclosure of the video content viewed to Facebook.  *Id.* ¶ 2.2.

### E.     Release

In exchange for the relief described above, the obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.  *Id.* ¶¶ 3.1-3.2.  Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them.

### F.      Notice And Administration Expenses

The Settlement Fund will be used to pay the cost of Settlement Administration Expenses, which includes sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administering the Settlement.  *Id.* ¶¶ 1.27, 1.32.

### G.      Incentive Award

In recognition for his efforts on behalf of the Settlement Class, Defendant has agreed that Plaintiff may receive, subject to Court approval, an incentive award of $5,000 from the Settlement Fund.  *Id.* ¶ 8.3.

### H.      Attorneys' Fees And Expenses

As part of the Settlement, Defendant has agreed that Class Counsel are entitled to reasonable attorneys' fees, costs, and expenses in an amount to be determined by the Court by petition.  *Id*. ¶ 8.1.  Class Counsel has agreed to limit its request to one-third of the Settlement Fund, with no consideration from Defendant.  *Id.*

## ARGUMENT

## I.      THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR PURPOSES OF SETTLEMENT

### A.      General Standards

The Court may certify a class for settlement purposes.  Certifying a class for settlement purposes satisfies the Rule 23 requirements more easily than a contested motion for certification.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997) ("Settlement is relevant to a class certification."); *In re Lupron Mktg. & Sales Pracs. Litig*., 345 F. Supp. 2d 135, 139 (D. Mass. 2004) (conditionally certifying a class for settlement purposes only at preliminary approval stage) (Stearns, R.); *see also Bishop-Bristol*, 2019 WL 1501581, at *5 (D. Mass. Feb. 5, 2019) (noting that the First Circuit has consistently recognized "the strong policy in favor of encouraging settlements, especially in a hard-fought, complex class action.").

Advisory Committee's Notes to Fed. R. Civ. P. 23(e)(1) ("the standards for certification differ for settlement and litigation purposes").  To certify a class under Rule 23(b)(3), a court must find that the four threshold elements of Rule 23(a) "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation," as well as  "one of the three elements" of Rule 23(b)(3) are satisfied.  *Bertella v. JetDirect Aviation, Inc.*, 2010 WL 4103664, at *1 (D. Mass. Oct. 19, 2010) (Stearns, R.).

Here, the action focuses on what Plaintiff alleges is Defendant's common course of conduct of allegedly disclosing its subscribers' protected video-viewing information and PII to Facebook in violation of the VPPA.[5]

### B.    Numerosity Is Satisfied

"As a practical matter, the numerosity requirement is met whenever the joinder of members of a proposed class is not feasible."  *Faherty v. CVS Pharmacy, Inc.*, 2011 WL 810178, at *1 (D. Mass. Mar. 9, 2011) (Stearns, R.).  "There is no minimum number of plaintiffs necessary to establish numerosity, 'but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *Belezos v. Bd. of Selectmen of Hingham, Massachusetts*, 2019 WL 6358247, at *7 (D. Mass. Nov. 27, 2019) (quoting *García-Rubiera v. Calderón*, 570 F.3d 443, 460 (1st Cir. 2009)).  Here, there were approximately 485,000 subscribers to the *Boston Globe* during the relevant time period.   Fraietta Decl. ¶ 26.   While not every subscriber is necessarily a Settlement Class Member (for example, a subscriber may not have had a Facebook account or may not have watched videos on Defendant's website) the total subscriber figure makes clear

---

[5] Defendant's non-opposition to certification of a settlement class is solely for purposes of effectuating the settlement and no other purpose.  Defendant retains all of its objections, arguments, and defenses with respect to class certification and any other issue, and reserves all rights to contest class certification and any other issue if final approval of the settlement is not granted, if the Court's approval is reversed or vacated on appeal, or if the settlement fails to become effective for any other reason.

that numerosity is satisfied.  Indeed, even if only 10% of Defendant's subscribers, or approximately 48,500, were Settlement Class Members numerosity would still be satisfied.

### C.   Commonality Is Satisfied

"To satisfy the commonality requirement, there must exist common questions of law or fact impacting each of the members of the proposed class.  'The threshold of 'commonality' is not high.  Aimed in part at 'determining whether there is a need for combined treatment and a benefit to be derived therefrom,' the rule requires only that resolution of the common questions affect all or a substantial number of the class members.'"  *Faherty*, 2011 WL 810178, at *2.  "For that reason, the commonality requirement has been characterized as a 'low hurdle.'"  *Id*.  "The commonality test is more qualitative than quantitative, and thus, there need be only a single issue common to all members of the class."  *Belezos*, 2019 WL 6358247, at *8.  Moreover, class members need not have identical claims, suffer identical injuries, or have identical damages: "Where class members have different degrees of injury or even where defenses might exist only as to particular individuals, commonality has been found for class certification."  *Applegate v. Formed Fiber Techs., LLC*, 2012 WL 3065542, at *6 (D. Me. July 27, 2012); *see also In re Lupron*, 228 F.R.D. at 88 (Stearns, R.) ("Rule 23 (a) does not require that every class member share every factual and legal predicate of the action.").

 Here, Plaintiff alleges that the common contention on which the claims of all class members depends is that Defendant disclosed its subscribers' video-viewing information and identities to Facebook in violation of the VPPA.  Plaintiff contends that determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 161 (D. Mass. 2019).

Determining the truth or falsity of this common contention raises numerous common

questions that track the elements of a VPPA claim, such as: (a) whether Defendant is a video tape service provider within the meaning of the statute; (b) whether the information Defendant allegedly disclosed to Facebook constitutes PII under the statute; and (c) whether Defendant knowingly disclosed the information to Facebook.  Plaintiff contends that the central factual and legal questions in the case can be determined on a class-wide basis using the same evidence regarding Defendant's practices.  *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 532–534 (E.D. Mich. 2015) (finding litigation under Michigan state analog to the VPPA was "driven by issues that are common to the entire putative class").

Of course, Defendant, if this case were to continue to be litigated, would argue that there are certain factors that undermine commonality, namely that the way in which class-members interacted with Defendant's website, class-member's browser settings, how they use Facebook, and any consent they may or may not have given to Facebook.  Notwithstanding as much.

Nonetheless, federal courts routinely find commonality satisfied for settlement purposes in similar disclosure cases even where the parties previously contested whether the pattern of disclosure was uniform.  *See, e.g.*, *Kinder v. Meredith Corp.*, 2016 WL 454441, at *1 (E.D. Mich. Feb. 5, 2016) ("[B]ecause there are common questions of both law and fact, including the course of [defendant's] conduct with customer purchasing information and the applicability of the [Michigan state analog to the VPPA] to that conduct, the commonality requirement is satisfied.").

### D.     The Class Representative's Claims Are Typical Of The Class

"The test for typicality, like commonality, is not demanding."  *Bertella*, 2010 WL 4103664, at *2.  "Typicality requires that the class representative's 'injuries arise from the same events or course of conduct as do the injuries of the class,' but his claims need not be 'identical to those of absent class members.'" *Ouadani*, 405 F. Supp. 3d at 162.  Further,

"Rule 23(a)(3) tolerates even significant differences between the named plaintiff and the proposed class members as long as the named plaintiff's experience is 'reasonably coextensive' with the experiences of the rest of the class." *Id*.  "The purpose of the typicality requirement is to 'align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Faherty*, 2011 WL 810178, at *2.

Here, Plaintiff alleges that Defendant's disclosure of his PII is typical of Defendant's disclosure of its others subscribers' PII to Facebook.  FAC ¶¶ 25, 28-36, 52-55.  It is Plaintiff's contention (which Defendant disagrees with) that no matter the person – whether it be Plaintiff or other members of the putative class – the disclosures are alleged to be made in the exact same manner and for the exact same purpose.  Plaintiff is also seeking only statutory damages as opposed to actual damages.  Accordingly, Plaintiff believes that by pursuing his own claims in this matter, he will necessarily advance the interests of the Settlement Class, and typicality is therefore satisfied for settlement purposes.

> **E.**     **Rule 23(a)(4) and Rule 23(g) Are Satisfied Because Class Representative And Class Counsel Will Fairly and Adequately Protect The Class' Interests**

The adequacy requirement is also satisfied.  This requirement has two prongs:  First, the interests of the representative party should not conflict with the interests of any of the class members.  *Bertella*, 2010 WL 4103664, at *3.  Second, class counsel should be "qualified, experienced and able to vigorously conduct the proposed litigation."  *Id*.

First, Plaintiff asserts there are no conflicts between himself and the Class.  Throughout the pendency of this action, Plaintiff has adequately and vigorously represented his fellow Class Members.  He has spent significant time assisting his counsel, providing information regarding his *Boston Globe* subscription and Facebook account, providing pertinent documents, and

assisting in settlement negotiations.  Fraietta Decl. ¶ 33.

Second, Proposed Class Counsel is highly experienced and well-versed in complex class action litigation, including in privacy class actions.  Fraietta Decl. ¶ 28; Ex. 2.  Courts across the country have recognized Proposed Class Counsel's experience in complex class litigation and its skilled and effective representation.  *Id.*   Thus, Proposed Class Counsel "is qualified, experienced and able to vigorously conduct the proposed litigation."  *Bertella*, 2010 WL 4103664, at *3.  Accordingly, both Rule 23(a)(4) and Rule 23(g) are satisfied.

### F.   The Requirements Of Rule 23(b)(3) Are Satisfied

#### 1.   Common Issues Predominate

"[W]here common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses," *In re Lupron*, 228 F.R.D. at 91.  If "issues common to the class predominate over those that are personal to class members[,]" then Rule 23(b)(3) is met.  *Id.*   "The rule does <u>not</u> require a plaintiff seeking class certification to prove that each element of her claim is susceptible of class wide proof."  *Id*. (quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015) (emphasis in original)).  As the Supreme Court stated:

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23 (b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123-124 (3d ed. 2005)).  Notably, as the First Circuit makes clear, "[w]here common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied."  *In re Nexium*, 777 F.3d at 21 (ellipses and citation omitted).

In this case, Plaintiff alleges a common course of conduct engaged in by Defendant.  If the case were fully litigated, for the reasons identified above, Defendant would argue the predominance requirement cannot be met. Nevertheless, particularly for purposes of settlement the predominance requirement is satisfied.  *See Kinder*, 2016 WL 454441, at *2 (E.D. Mich. Feb. 5, 2016) (approving settlement under Michigan state analog to VPPA); *see also In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous other cases).

### 2.    Class Settlement Is Superior To Alternate Methods of Adjudication

The superiority requirement in Rule 23(b)(3) "aims to provide for the 'vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court.'"  *In re P.R. Cabotage Antitrust Litig.*, 269 F.R.D. at 140  (quoting *Amchem*, 521 U.S. at 617).  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; the desirability of concentrating the litigation of the claims in the particular forum; and manageability concerns.  Fed. R. Civ. P. 23(b)(3). As a general matter, the manageability factor need not be evaluated here for a settlement-only class. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Here, Plaintiff believes class treatment is superior to other methods of adjudication. Individual lawsuits by Class Members would be unmanageable, costly, and an inefficient use of judicial resources.  Thus, "both fairness and efficiency support class certification, where otherwise the numerous individual class members would be forced to file suit individually, producing numerous identical issues in each case that would waste judicial resources and leave

all parties vulnerable to unfair inconsistencies." *In re Solodyn (Minocycline Hydrochloride)* *Antitrust Litig.*, 2017 WL 4621777, at *21 (D. Mass. Oct. 16, 2017) (quotations omitted). Proposed Class Counsel is unaware of any individual actions that have been instituted by Class Members. Fraietta Decl. ¶ 34.  Moreover, a class action settlement provides class members with the opportunity for an expeditious resolution as opposed to protracted litigation that may or may not result in any benefit at all.

Accordingly, the Court should grant certification for settlement purposes.

### 3. The Court Should Appoint Plaintiff As Class Representative And Proposed Class Counsel As Class Counsel Under Rule 23(g)

The Court should appoint Plaintiff as Class Representative.  Plaintiff has actively developed this case and vigorously represented the interests of the Class.  He has provided Counsel with information to help prepare and advance the case, responded to multiple information requests, and represented the Class in settlement discussions.  Accordingly, the Court should appoint Plaintiff as Class Representative.

The Court should also appoint Philip L. Fraietta, Joshua D. Arisohn, and Christopher R. Reilly of Bursor & Fisher, P.A. as Class Counsel under Fed. R. Civ. P. 23(g).  Proposed Class Counsel has substantial experience in successfully prosecuting class actions throughout the country. Fraietta Decl. ¶ 28; Ex. 2.  Both before and throughout this litigation, Proposed Class Counsel has conducted a full and thorough investigation of this matter.  Fraietta Decl. ¶¶ 4-5.  Proposed Class Counsel has zealously represented the interests of the Class and committed substantial resources to the resolution of the class claims.  Fraietta Decl. ¶ 35.

## II. THE PROPOSED SETTLEMENT IS PRESUMPTIVELY FAIR AND SHOULD BE PRELIMINARILY APPROVED UNDER RULE 23(e)

Courts favor the settlement of complex class action litigation. *See Lazar*, 757 F.2d at 440 (recognizing the "overriding public interest in favor of the voluntary settlement of disputes,

particularly where class actions are involved"); *Hochstadt*, 708 F. Supp. 2d at 102 ("the law favors class action settlements").

"Rule 23(e)(2) permits the Court to approve a class action settlement only if the proposed agreement is fair, adequate, and reasonable.  At the preliminary approval stage, however, a less rigorous standard applies: the Court need only determine whether the settlement appears to fall within the range of possible final approval."  *Del Sesto v. Prospect Chartercare, LLC*, 2019 WL 2162083, at *1 (D.R.I. May 17, 2019) (citations and quotations omitted).  For present purposes, the Court considers whether the proposed settlement contains "obvious deficiencies."  *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010) (the Court need only "examine the proposed settlement for obvious deficiencies").

A proposed settlement is presumptively fair if the court find that "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  *In re Lupron*, 345 F. Supp. 2d at 137 (Stearns, R.).[6]  These factors all strongly support approval here. Thus, the Settlement should be submitted to the Class for their input and potential endorsement.

### A.     The Settlement Is Presumptively Fair And Should Be Preliminarily Approved

There is "a presumption that a settlement is within the range of reasonableness"—thus meeting the fairness considerations at the preliminary approval stage—when it has been negotiated at arm's length by experienced counsel after the exchange of sufficient information.  *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015). If, as here, these factors are met and the terms of the settlement, "on their face . . . appear fair, reasonable, and adequate," preliminary approval is warranted.  *See Del Sesto*, 2019 WL 2162083,

---

[6] These factors substantially overlap with the factors outlined in the recently amended Rule 23(e), and thus can be considered in tandem.  *See Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59-60 (1st Cir. 2021) (affirming approval of class action settlement).

at *1. Thus, Class Members should be given notice of the Settlement and an opportunity to weigh in on its terms.

      **B.**      **The Settlement Is Based On Arm's Length Negotiations Conducted After Extensive Investigation And The Exchange Of Ample Information**

The Parties engaged in a private mediation with the Honorable Frank Maas (Ret.), an experienced and renowned mediator to assist them in reaching the proposed Settlement. Following this mediation session, the Parties reached the Settlement though several weeks of additional negotiations and other extensive communications facilitated by Judge Maas.  Fraietta Decl. ¶¶ 20-21.  Where, as here, the Settlement is the product of mediation with an experienced mediator, there is a presumption of fairness and arm's length negotiations. *See, e.g.*, *Roberts v. TJX Cos., Inc.*, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) ("the participation of an experienced mediator[] also supports the Court's finding that the Settlement is fair, reasonable, and adequate.").

Additionally, the Parties have exchanged sufficient information "to make an intelligent judgment about settlement." *Bezdek*, 79 F. Supp. at 348.  Indeed, the Parties investigated the facts underlying Plaintiff's allegations before and during this litigation.  Fraietta Decl. ¶¶ 4-5; 14; 18-19.  Defendant also provided information pertaining to the class size in advance of the mediation.  *Id*.  The Parties exchanged further information through written correspondence; phone calls; detailed mediation statements and exhibits submitted by the Parties; and mediation.

Thus, "the parties exchanged sufficient information over the course of the mediation process to ensure that both sides were making an informed decision regarding the adequacy of the settlement." *Roberts*, 2016 WL 8677312, at *5.

**C.**   **Counsel Is Highly Experienced In Similar Litigation And Its Considered Opinion Regarding The Settlement Is Entitled To Significant Weight**

Proposed Class Counsel has extensive expertise litigating and settling complex class actions.  Thus, Counsel's recommendation that the Settlement is favorable to the Class is entitled to "significant weight" and further supports a preliminary presumption of fairness. *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bezdek*, 79 F. Supp. 3d at 348 ("I find that the parties had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced").

**D.**   **The Settlement Falls Well Within The Range Of Possible Approval**

The Court should conclude that the settlement benefits are sufficiently robust to support submission of the Agreement to the Class.  *See Del Sesto*, 2019 WL 2162083, at *1 ("On their face, these terms appear fair, reasonable, and adequate").  At the final approval stage, the Court will have the opportunity to fully assess the sufficiency of the settlement amount by considering the potential recovery as well as the strength of the case and the risks and burdens of further litigation.  At this stage, the Court has more than a sufficient basis to find that the proposed Settlement comes well within the range of possible approval and that the settlement amount represents a highly successful outcome for the Class.

The Settlement provides for substantial monetary relief, in kind relief, and prospective relief to Class Members.  *See supra* § II.B-D (detailing the benefits provided by the Settlement). In the absence of settlement, the complexity of this case and the novel legal theories make continued litigation an inherently risky, costly, and timely undertaking.  Because the proposed

Settlement was negotiated at arm's length by experienced counsel, is neither illegal nor collusive nor obviously deficient, and falls within the range of possible final approval, it should be preliminarily approved and submitted to the Class for its feedback.

### III.     THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

#### A.     The Content Of The Proposed Class Notice Complies With Rule 23(c)(2)

Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

The Notice provides detailed information about the Settlement, including: 1) a comprehensive summary of its terms; 2) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and incentive awards for the Named Plaintiffs; and 3) detailed information about the Released Claims.  *See* Settlement Exhibits A-D (attached to Exhibit 1 of Fraietta Decl.).  In addition, the Notice provides information about the Fairness Hearing date, the right of Class Members to seek exclusion from the Class or to object to the proposed Settlement (as well as the deadlines and procedure for doing so), and the procedure to receive additional information.  *Id.*  In short, the Notice is intended to fully inform Class Members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights.  The very detailed information in this proposed notice goes well beyond the requirements of the Federal Rules.  Indeed, courts have approved class notices even when they provided only general information about a settlement.  This information is adequate to put Class Members on

notice of the proposed Settlement and is well within the requirements of Rule 23(c)(2)(B).

**B.     The Plan For Distribution Of The Class Notice Will Comply
With Rule 23(c)(2)**

The Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and Due process.  First, the Settlement Administrator will send direct notice by email to all Settlement Class Members for whom a valid email address is identified in Defendant's records.  Agreement ¶ 4.1(b); *see also* Ex. B.  The email will contain an electronic link to the online claim form.  *Id.*  Next, the Settlement Administrator will send direct notice by First Class U.S. Mail, along with a postcard claim form with prepaid return postage, to all the Settlement Class Members who did not receive an email.  Agreement ¶ 4.1(c); *see also* Ex. C.  The Settlement Administrator will also send reminder notices via email both 30 and 7 days prior to the Claims Deadline to all Settlement Class Members for whom a valid email address is available.  Agreement ¶ 4.1(d).  Further, the Settlement Administrator will establish a Settlement Website that shall contain the "long form notice" *see* Ex. D, as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online.  *Id.* ¶ 4.1(e).  Finally, the Settlement Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715.  *Id.* ¶ 4.1(f).

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Motion for Preliminary Approval of the Settlement.  A Proposed Order granting preliminary approval, certifying the Settlement Class, appointing Class Counsel, and approving the Proposed Notice of Settlement, is submitted herewith.

Dated:  May 19, 2023

Respectfully submitted,

By: _____ */s/ Philip L. Fraietta* _____
Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*Pro Hac Vice*)
Philip L. Fraietta (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jarisohn@bursor.com
pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly (*Pro Hac Vice*)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
Email:   creilly@bursor.com

*Proposed Class Counsel*

**BIRNBAUM & GODKIN, LLP**
David S. Godkin (BBO#196530)
James E. Kruzer (BBO#670827)
1 Marina Park Drive, Suite 1410
Boston, MA 02210
Telephone:  (617) 307-6100
Email:    godkin@birnbaumgodkin.com
kruzer@birbnaumgodkin.com

*Local Counsel for Plaintiff and the Proposed
Settlement Class*