UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID AMBROSE, individually and on behalf of all others similarly situated,<br><br>                   Plaintiff,<br><br>  v.<br><br>BOSTON GLOBE MEDIA PARTNERS, LLC,<br><br>                   Defendant. | Civil Action No. 1:22-cv-10195-RGS<br><br>Hon. Richard G. Stearns |

**DECLARATION OF PHILIP L. FRAIETTA IN SUPPORT OF PLAINTIFF'S ASSENTED TO MOTION FOR PRELIMINARY APPROVAL OF <u>CLASS ACTION SETTLEMENT</u>**

I, Philip L. Fraietta, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action. I am an attorney at law licensed to practice in the States of New York, New Jersey, Illinois, and Michigan, and I am admitted in this action *pro hac vice*. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2.     I make this declaration in support of Plaintiff's assented motion for preliminary approval of class action settlement filed herewith.

3.     Attached hereto as **Exhibit 1** is a true and correct copy of the Parties' Class Action Settlement Agreement (the "Settlement"), and the exhibits attached thereto.

4.     Prior to filing this action, Proposed Class Counsel conducted a thorough pre-suit investigation, including into the workings of the Facebook Tracking Pixel and its utilization on Defendant's website.

5. Following that investigation, on February 5, 2022, Plaintiff David Ambrose filed a putative class action on behalf of subscribers to the *Boston Globe* who have a Facebook account and viewed videos on Defendant's website pursuant to the Video Protection Privacy Act, 18 U.S.C. § 2710, *et. seq.* (the "VPPA"). ECF No. 1. To my knowledge, this was the first ever Facebook Tracking Pixel-based VPPA case filed across the country, thus pioneering the field. Indeed, since that time, dozens of Facebook Tracking Pixel-based VPPA cases have been filed across the country.

6. On April 29, 2022, in response to the Complaint, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 12.

7. On May 20, 2022, Plaintiff filed the operative First Amended Complaint (the "FAC") pursuant to Fed. R. Civ. P. 15(a)(1)(B) to address the purported deficiencies in the original Complaint. ECF No. 22.

8. On June 21, 2022, Defendant filed a motion to dismiss Plaintiff's Amended Complaint, which was accompanied by a 20-page memorandum of law. ECF No. 25.

9. On July 19, 2022, Plaintiff filed his opposition to Defendant's motion to dismiss, which comprised of a 19-page memorandum of law. ECF No. 28.

10. On August 17, 2022, Defendant filed its reply memorandum of law in support of its motion to dismiss. ECF No. 29.

11. The issues briefed in the motion to dismiss were novel. Indeed, at the time, no court had ever addressed a motion to dismiss a Facebook Tracking Pixel-based VPPA case.

12. On September 19, 2022, the Court issued a Memorandum and Order denying Defendant's motion to dismiss in its entirety. ECF No. 31.

13. On October 12, 2022, Defendant answered the Amended Complaint by denying

the allegations generally and raising nine affirmative defenses.  ECF No. 36.

14. Thereafter, the Parties engaged in written and document discovery, which included meet-and-confer conferences, and exchanged initial disclosures pursuant to Rule 26.

15. From the inception of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution.

16. Those discussions led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before The Honorable Frank Maas (Ret.) – formerly of the Southern District of New York and now a mediator at JAMS (New York).

17. The Parties stipulated to stay the case pending the mediation and the Court granted that stipulation on January 18, 2023.  ECF No. 39.

18. As part of the mediation, the Parties exchanged informal discovery, including on issues such as the size of the potential class.  The parties also exchanged detailed mediation statements, airing their respective legal arguments and theories on potential damages.

19. Given that this information was the same or largely similar to discovery that would be produced in formal discovery related to class certification and summary judgment, the Parties were able to sufficiently assess the strengths and weaknesses of their cases.

20. The mediation took place on February 8, 2023.  While the Parties engaged in good faith negotiations, which at all times were at arms' length, they failed to reach an agreement that day.  However, because the Parties felt they had made progress, they stipulated to extend the stay to continue their mediation efforts, which the Court granted.  ECF Nos. 41, 43, 45.

21. Over the next several weeks, the Parties engaged in additional rounds of arms' length negotiations facilitated by Judge Maas, and, on March 31, 2023, reached agreement on all

material terms of a class action settlement and executed a term sheet.  ECF No. 46.

22.     In the weeks following, the Parties negotiated and finalized the full-form Settlement Agreement, which is attached to this Declaration as Exhibit 1.

23.     The resulting Proposed Settlement secures an excellent recovery for the Settlement Class.  Pursuant to the Settlement, Defendant will establish a non-reversionary cash Settlement Fund in the amount of $4,000,000.  Settlement ¶ 1.32.  Settlement Class Members will be entitled to submit claims against the Settlement Fund.  *Id.* ¶ 2.1.  All Settlement Class Members who submit a valid claim will be entitled to a *pro rata* portion of the Settlement Fund after payment of Settlement Administration Expenses, attorneys' fees and costs, and any incentive award, if approved by the Court.  *Id.*  Assuming a 10-20% claims rate,[1] Proposed Class Counsel estimates that each claiming Settlement Class Member will receive a net payment of $22-$44.

24.     In addition to the monetary relief described above, Defendant will also provide up to $1,000,000 of In Kind Relief, in the form of an extension of any existing digital subscription to the *Boston Globe* of whatever type enjoyed by the claiming Settlement Class Member for a maximum of 7 days past its current expiration date for no additional payment.  *Id.* ¶ 1.16.  Settlement Class Members will have the ability to select In Kind Relief in addition to a monetary payment, or as a stand-alone remedy.  *Id.* ¶ 2.1(b).

---

[1] This estimated claims rate is well above typical claims rate in class action settlements.  *See* Fed. Trade Comm'n, Administration of Settlements in CONSUMERS AND CLASS ACTIONS: A RETROSPECTIVE AND ANALYSIS OF SETTLEMENT CAMPAIGNS 11 (2019) (finding the weighted mean claims rate was 4%).  However, recent settlements under Michigan's state analog to the VPPA (in which Proposed Class Counsel were Class Counsel) saw similar claims rates.  *See, e.g.*, *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444, ECF No. 111 (S.D.N.Y. Dec. 4, 2018) (16.8% claims rate); *Moeller v. Am. Media, Inc.*, No. 16-cv-11367, ECF No. 42 (E.D. Mich. Sept. 28, 2017) (10% claims rate).  Thus, Proposed Class Counsel believes this estimate is reasonable and attainable.  Of course, given the *pro rata* nature of the settlement payments, a lower claims rate will result in higher per claimant payouts.

25.     As part of the Settlement, within 45 days of the Preliminary Approval Order, Defendant will also agree to suspend operation of the Facebook Tracking Pixel on any pages on its website that both include video content and have a URL that substantially identifies the video content viewed, unless and until the VPPA is amended, repealed, or otherwise invalidated (including by judicial decision on the use of website pixel technology by the United States Supreme Court, any federal court of appeals, a U.S. federal district court in Massachusetts, or a Massachusetts state court of general jurisdiction), or until Defendant obtains VPPA-compliant consent for the disclosure of the video content viewed to Facebook.  *Id.* ¶ 2.2.

26.     Based on Defendant's records there were approximately 485,000 subscribers to the *Boston Globe* during the relevant time period, although not every subscriber is necessarily a Settlement Class Member (for example, a subscriber may not have had a Facebook account or may not have watched videos on Defendant's website).  Still, even if a small percentage of those subscribers are Settlement Class Members the Settlement Class would still number in the thousands.

27.     From the outset of the case, Plaintiff and Proposed Class Counsel recognized that the case presented a substantial and novel litigation risks.  As aforementioned, this was the first ever Facebook Tracking Pixel-based VPPA case to be filed across the country, and therefore the case necessarily presented novel and complex legal issues.  For example, Defendant contends that:  (i) it is not a "video tape service provider" within the meaning of the VPPA; (ii) the information it allegedly disclosed to Facebook does not constitute PII within the meaning of the VPPA; and (iii) any disclosures of PII to Facebook were not made by Defendant "knowingly," as required by the VPPA.  An adverse decision on any of these contentions would deprive Plaintiff and the Settlement Class of any recovery whatsoever.

28. My firm, Bursor & Fisher, P.A., and I have significant experience in litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Bursor & Fisher, P.A., a true and accurate copy of which is attached hereto as **Exhibit 2**). My firm and I regularly engage in major complex litigation involving consumer privacy, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. *See* Ex. 2; *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008.").

29. The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of a neutral mediator.

30. Plaintiff and Proposed Class Counsel recognize that despite our belief in the strength of Plaintiff's claims, and Plaintiff's and the Class's ability to ultimately each secure a $2,500 statutory award under the VPPA, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain.

31. Plaintiff and Proposed Class Counsel are also mindful that absent a settlement, the success of Defendant's various defenses in this case could deprive the Plaintiff and the Settlement Class Members of any potential relief whatsoever. Defendant is represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case. Plaintiff and Proposed Class Counsel are also

aware that Defendant would continue to challenge liability, as well as assert a number of defenses. *See supra* ¶ 27. Plaintiff and Proposed Class Counsel are also aware that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial. Looking beyond trial, Plaintiff is also aware that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play, it would argue – in both the trial and appellate courts – that the award of any statutory damages is not warranted or for a reduction of damages based on due process concerns.

32. Plaintiff and Proposed Class Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the settlement is fair, reasonable, and adequate, and well within the range of approval.

33. Throughout the pendency of this action, David Ambrose, the Class Representative, has adequately and vigorously represented his fellow Settlement Class Members. He has spent significant time assisting his counsel, providing information regarding his *Boston Globe* subscription and Facebook account, providing pertinent documents, and assisting in settlement negotiations.

34. My firm is unaware of any individual actions that have been instituted by Settlement Class Members.

35. Proposed Class Counsel has zealously represented the interests of the Settlement Class and committed substantial resources to the resolution of the Settlement Class's claims.

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 19th day of May 2023 at New York, New York.

    */s Philip L. Fraietta*  
Philip L. Fraietta