**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

DAVID AMBROSE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BOSTON GLOBE MEDIA PARTNERS, LLC,

Defendant.

Civil Action No. 1:22-cv-10195-RGS

Hon. Richard G. Stearns

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS, EXPENSES, AND INCENTIVE AWARD

Dated: July 28, 2023

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*Pro Hac Vice*)
Philip L. Fraietta (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jarisohn@bursor.com
pfraietta @bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly (*Pro Hac Vice*)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: creilly@bursor.com

*Class Counsel*

[Local Counsel on Signature Page]

## TABLE OF CONTENTS


PAGE(S)

INTRODUCTION ..... 1

FACTUAL AND PROCEDURAL BACKGROUND ..... 2

- A. Factual Background ..... 2
- B. Procedural History ..... 3
- C. History of Settlement Discussions ..... 4

I. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED ..... 5

- A. The Court Should Utilize The Percentage Of The Fund Method ..... 5
- B. The Reasonableness Of The Requested Fee Is Supported By The Relevant Factors ..... 7
  - 1. Factor 1: The Size of the Fund and the Number of Persons Benefitted ..... 7
  - 2. Factor 2: Counsel for Both Parties are Highly Competent, Experienced, And Efficiently Prosecuted This Case ..... 8
  - 3. Factor 3: This Class Action is Complex ..... 9
  - 4. Factor 4: The Risk of Non-Payment ..... 10
  - 5. Factor 5: Class Counsel Dedicated Significant Time and Labor to This Case ..... 11
  - 6. Factor 6: The Requested Award is Aligned with Awards in Comparable Cases ..... 14
  - 7. Factor 7: Public Policy Considerations ..... 15

II. PLAINTIFF IS ENTITLED TO AN INCENTIVE AWARD IN THE AMOUNTREQUESTED ..... 16

CONCLUSION ..... 17

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Ambrose v. Boston Globe Media Partners LLC*,
2022 WL 4329373 (D. Mass. Sept. 19, 2022) .......... 9, 10

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) .......... 12

*Bezdek v. Vibram USA INC.*,
79 F. Supp. 3d 324 (D. Mass. 2015) .......... 16

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) .......... 15

*Gordan v. Massachusetts Mut. Life Ins. Co.*,
2016 WL 11272044 (D. Mass. Nov. 3, 2016) .......... 6, 7

*In re Asacol Antitrust Litig.*,
2017 WL 11475275 (D. Mass. Dec. 7, 2017) .......... 6

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) .......... 13, 14

*In re Continental Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .......... 6

*In re Google LLC Street View Elec. Commc'ns Litig.*,
2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .......... 15

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) .......... 9

*In re Lupron Mktg. & Sales Pracs. Litig.*,
2005 WL 2006833 (D. Mass. Aug. 17, 2005) .......... 7, 9, 10

*In re Nat'l Football League Players' Concussion Injury Litig.*,
2018 WL 1635648 (E.D. Pa. Apr. 5, 2018) .......... 13

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) .......... 7

*In re Sequoia Sys., Inc. Sec. Litig.*,
1993 WL 616694 (D. Mass. Sept. 10, 1993) .......... 12

*In re StockerYale, Inc. Sec. Litig.*,
2007 WL 4589772 (D.N.H. Dec. 18, 2007) .......... 7

*In re Thirteen Appeals*,
56 F.3d 295 (1st Cir. 1995) .......... 6, 12

*In re TikTok, Inc., Consumer Privacy Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. July 28, 2022) .......... 14

*In re: Vizio, Inc., Consumer Privacy Litig.*,
2019 WL 12966638 (C.D. Cal. July 31, 2019) .......... 15

*Kondash v. Citizens Bank, National Association*,
2020 WL 7641785 (D.R.I. Dec. 23, 2020) .......... 5, 7

*Kristian v. Comcast Corp.*,
446 F.3d 25 (1st Cir. 2006) .......... 15

*Lane v. Facebook, Inc.*,
2010 WL 9013059 (N.D. Cal. Mar. 17, 2010) .......... 14

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......... 12

*Medoff v. CVS Caremark Corp.*,
2016 WL 632238 (D.R.I. Feb. 17, 2016) .......... 11

*Roberts v. TJX Companies, INC.*,
2016 WL 8677312 (D. Mass Sept. 30, 2016) .......... 11, 12

*Rogers v. BNSF Railway Co.*,
2023 WL 4297654 (N.D. Ill. June 30, 2023) .......... 10

*Scovil v. FedEx Ground Package System, Inc.*,
2014 WL 1057079 (D. Me. Mar. 14, 2014) .......... 16

*Sylvester v. Cigna Corp.*,
401 F. Supp. 2d 147 (D. Me. 2005) .......... 7

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022) .......... 11

*Williamson v. Microsemi Corp.*,
2015 WL 13650045 (N.D. Cal. Feb. 19, 2015) .......... 13

**STATUTES**

18 U.S.C. § 2710 .......... 1

**RULES**

Fed. R. Civ. P. 23(h) ........................................................................................................ 5

Fed. R. Civ. P. 26 ............................................................................................................. 4

**INTRODUCTION**

In this putative class action, Plaintiff David Ambrose ("Plaintiff") alleges that Defendant Boston Globe Media Partners, LLC ("Defendant") violated the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA") by installing and running the Facebook Tracking Pixel on its website, thereby causing its subscribers' personally identifiable information – which the VPPA defines as including information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider – to be disclosed to Facebook. Although dozens of similar cases have since been filed across the country, this was the first ever Facebook Tracking Pixel-based VPPA case, thus pioneering the field.

After extensive arms' length negotiations, including a mediation with The Honorable Frank Maas (Ret.) – formerly of the Southern District of New York and now a mediator at JAMS (New York), the Parties agreed to a Class Action Settlement (the "Agreement" or "Settlement")[1] that requires Defendant to establish a $4 million all-cash, non-reversionary Settlement Fund from which Settlement Class Members may file claims for a *pro rata* cash recovery, which Class Counsel estimates will amount to payments of approximately $20-$40 each. Additionally, Defendant has agreed to provide up to $1 million of In Kind Relief, which will consist of an extension of any existing digital subscription to the *Boston Globe* for a maximum of seven days past its current expiration date for no additional payment. And equally important, Defendant has agreed to meaningful prospective relief as it will suspend operation of the Facebook Tracking Pixel on any pages on its website that both include video content and have a URL that substantially identifies the video content viewed, unless and until the VPPA is amended, repealed, or otherwise invalidated, or until Defendant obtains VPPA-compliant consent for the disclosure of the video

[1] Unless otherwise indicated, all capitalized terms herein have the same meaning as ascribed to them in the "Definitions" section of the Settlement Agreement.

content viewed to Facebook.

The Settlement provides that Class Counsel may seek up to one-third of the Settlement Benefit in attorneys' fees, costs, and expenses, and a $5,000 incentive award for Plaintiff. This Court preliminarily approved the Settlement on May 25, 2023 (*see* ECF No. 52), and also approved a detailed Notice of Settlement of Class Action ("Notice") that outlined the Settlement terms, including attorneys' fees, costs, expenses, and incentive award. So far, the Class response has been overwhelming: Class Members resoundingly approve the Settlement—not a single Class Member has objected to the Settlement.

Accordingly, Plaintiff seeks (1) reasonable attorneys' fees and costs totaling $1,666,666.67, or one-third of the Settlement Benefit; and (2) an incentive award of $5,000 for Plaintiff in recognition of his contributions to the case, his service to the Class Members, and the efforts and risks he undertook in bringing this litigation.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Plaintiff alleges that Defendant is a "'multimedia organization that provides news, entertainment, and commentary across multiple brands and platforms.'" (ECF No. 22) (the "FAC") ¶ 8 (quoting Defendant's press release). According to Plaintiff, Defendant's website, bostonglobe.com, features "national and local content daily," including "news articles, photographs, images, illustrations, audio clips and video clips." *Id.* ¶ 9. Plaintiff further alleges that Defendant incorporates the code for the Facebook Tracking Pixel on its website, which, when activated "'tracks the people and type of actions they take.'" *Id.* ¶ 25 (quoting Facebook's documentation). According to Plaintiff, when a visitor navigates to bostonglobe.com, Defendant transmits certain event data to Facebook "permit[ing] an ordinary person to identify what video an individual has watched." *Id.* ¶ 32. Plaintiff further alleges that Defendant sends this data to

Facebook alongside the c_user cookie, which contains an "unencrypted Facebook ID." *Id.* ¶¶ 33, 47. Thus, Plaintiff alleges that Defendant "knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior." *Id.* ¶¶ 52-55. Defendant has denied, and continues to deny, many of these allegations.

### B. Procedural History

Prior to filing this matter, Class Counsel undertook an extensive pre-suit investigation, which included identifying the Facebook Tracking Pixel and developing a methodology to test for the Pixel's use on various websites. Declaration of Philip L. Fraietta In Support of Plaintiff's Motion for Attorneys' Fees, Costs, Expenses, and Incentive Award ("Fraietta Decl.") ¶ 4. That process was technical and required substantial labor and technological knowledge. *Id.* From there, Class Counsel developed a legal theory of the case pursuant to the VPPA, and on February 5, 2022, Class Counsel filed the first ever Facebook Tracking Pixel-based VPPA case, thus pioneering the field. ECF No. 1. The detailed, technical research included in the Complaint and the FAC speaks for itself and provided a roadmap that has led to dozens of similar Facebook Tracking Pixel-based VPPA cases being filed in courts across the country. Fraietta Decl. ¶ 5; *see also generally* Compl.; FAC.

Plaintiff filed his Amended Complaint on May 20, 2022, which is the operative complaint in this matter. ECF No. 22. On June 21, 2022, Defendant filed a motion to dismiss Plaintiff's Amended Complaint, which was accompanied by a 20-page memorandum of law. ECF No. 25. On July 19, 2022, Plaintiff filed his opposition to Defendant's motion to dismiss, which comprised of a 19-page memorandum of law. ECF No. 28. On August 17, 2022, Defendant filed its reply memorandum of law in support of its motion to dismiss. ECF No. 29. The issues briefed in the motion to dismiss were novel. Indeed, at the time, no court had ever addressed a motion to dismiss a Facebook Tracking Pixel-based VPPA case. Fraietta Decl. ¶ 11

On September 19, 2022, this Court issued a Memorandum and Order denying Defendant's motion to dismiss. ECF No. 31. On October 12, 2022, Defendant answered the Amended Complaint by denying the allegations generally and raising nine affirmative defenses. ECF No. 36. Thereafter, the Parties engaged in written and document discovery, which included meet-and-confer conferences, and exchanged initial disclosures pursuant to Fed. R. Civ. P. 26. *See* Fraietta Decl. ¶ 14. Class Counsel also engaged a consulting expert who assisted in preparing discovery and tailoring Plaintiff's theory of the case. *See id.* ¶ 15.

### C. History of Settlement Discussions

Mindful that, as with any litigation, there is significant risk to both sides, from the outset of the case, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution. *Id.* ¶ 16. Those discussions led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before Judge Maas. *Id.* ¶ 17. The Parties stipulated to stay the case pending the mediation and the Court granted that stipulation on January 18, 2023. ECF No. 39.

In advance of the mediation, the Parties exchanged informal discovery, including on the size of the potential class. Fraietta Decl. ¶ 19. The parties also exchanged detailed mediation statements, airing their respective legal arguments and theories on potential damages. *Id.* Given that this information was the same or largely similar to discovery that would be produced in formal discovery related to class certification and summary judgment, the Parties were able to sufficiently assess the strengths and weaknesses of their cases. *Id.* ¶ 20.

On February 8, 2023, the Parties participated in a mediation before Judge Maas. *Id.* ¶ 21. While the Parties engaged in good faith negotiations, which at all times were at arms' length, they failed to reach an agreement that day. *Id.* However, because the Parties felt they had made progress, they stipulated to extend the stay to continue their mediation efforts, which the Court

granted. ECF Nos. 41, 43, 45. Over the next several weeks, the Parties engaged in additional rounds of arms' length negotiations facilitated by Judge Maas, and, on March 31, 2023, reached agreement on all material terms of a class action settlement and executed a term sheet. Fraietta Decl. ¶ 22; *see also* ECF No. 46. Thereafter, Class Counsel negotiated the full-form Settlement Agreement, selected a Settlement Administrator after a competitive bidding process, prepared a motion for preliminary approval, worked with the Settlement Administrator to effectuate the Notice, and has fielded calls from Settlement Class Members answering their questions and assisting them in filing claims. Fraietta Decl. ¶¶ 23, 25. Class Counsel has also worked with the Settlement Administrator on a weekly basis to monitor settlement claims and any other issues that may arise. *Id.* ¶ 26.

## ARGUMENT

### I. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED

The requested fee award of $1,666,666.67, representing one-third of the common fund, is reasonable and merits approval. Under Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h).[2] Here, the Settlement Agreement between the Parties provides that Class Counsel may petition the Court for an award up to one-third of the Settlement Benefit. Agreement ¶ 8.1.

#### A. The Court Should Utilize The Percentage Of The Fund Method

The First Circuit recognizes that "use of the POF [percentage of the fund] method in

[2] The requested fee award also encompasses unreimbursed litigation expenses. Agreement ¶ 8.1. Reasonable litigation-related expenses are customarily awarded in common fund cases and include costs such as expert fees, mediation fees, and travel. *Kondash v. Citizens Bank, National Association*, 2020 WL 7641785, at *6 (D.R.I. Dec. 23, 2020).

common fund cases is the prevailing praxis" and has "distinct advantages." *In re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir. 1995). Specifically, the First Circuit has noted that:

> [U]sing the POF method in a common fund case enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency. Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement. … If the POF method is utilized, a lawyer is still free to be inefficient or to drag her feet in pursuing settlement options – but, rather than being rewarded for this unproductive behavior, she will likely reduce her own return on hours expended.

*Id.* (citations omitted). Moreover, "because the POF technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace. We think Judge Posner captured the essence of the point when he wrote that 'the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character.' In fine, the market pays for the result achieved." *Id.* (quoting *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992)). "Indeed, there is a clear consensus among federal and state courts that the percentage of the fund approach is the more efficient, better reasoned, and effective method." *Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016).

Against that backdrop, courts throughout the First Circuit routinely approve fee awards of one-third of a common fund. *See Sullivan v. Sleepy's LLC*, No. 1:17-cv-12009-RGS, ECF No. 66 (D. Mass. Dec. 18, 2019) (awarding one-third of $3.9 million settlement); *Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-cv-11390-RGS, ECF No. 220 (D. Mass. April. 19, 2016) (awarding one-third of $10 million settlement); *Gordan*, 2016 WL 11272044, at *3 (awarding one-third of $30.9 million settlement); *In re Asacol Antitrust Litig.*, 2017 WL 11475275, at *4 (D. Mass. Dec. 7, 2017) (awarding one-third of $15 million settlement); *Matamoros v. Starbucks*

*Corporation*, No. 08-cv-10772-NMG, ECF No.169 (D. Mass. 2013) (awarding one-third of $23.5 million settlement); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (awarding one-third of $67 million settlement and noting that "the one-third percentage of fund fee is not unreasonable as matter of law."); *Sylvester v. Cigna Corp.*, 401 F. Supp. 2d 147, 151 (D. Me. 2005) (awarding one-third of $2.3 million settlement); *Kondash v. Citizens Bank, National Association*, 2020 WL 7641785, at *4-5 (D.R.I. Dec. 23, 2020) (awarding one-third of $1,837,500 settlement fund and noting that "the traditional one-third of the fund has been routinely approved as appropriate" in similar federal statutory litigation under the TCPA); *In re StockerYale, Inc. Sec. Litig.*, 2007 WL4589772, at *6-7 (D.N.H. Dec. 18, 2007) (awarding 33% of $3.4 million settlement).

### B. The Reasonableness Of The Requested Fee Is Supported By The Relevant Factors

"While the First Circuit does not mandate the weighing of any specific set of factors in assessing a common fund fee request, typical considerations include: (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any." *In re Lupron Mktg. & Sales Pracs. Litig.*, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005) (Stearns, J.). Here, each of the factors weighs in support of the requested fee award.

#### 1. Factor 1: The Size of the Fund and the Number of Persons Benefitted

The Settlement provides significant and immediate relief to the Class Members: a $4

million non-reversionary cash payment, plus up to $1 million of In Kind Relief,[3] plus meaningful prospective relief in the form of an agreement to suspend operation of the Facebook Tracking Pixel on any pages on Defendant's website that both include video content and have a URL that substantially identifies the video content viewed, unless and until the VPPA is amended, repealed, or otherwise invalidated, or until Defendant obtains VPPA-compliant consent for the disclosure of the video content viewed to Facebook. In total, the Settlement provides $5 million of monetary benefit, plus meaningful prospective relief.

And while it is not possible to state with precision how many Settlement Class Members there are, it is clear that the Settlement Class includes at least thousands of people. To elaborate, Defendant's records ultimately showed that approximately 522,145 *Boston Globe* subscribers visited Defendant's website during the class period, but not every one of those subscribers is necessarily a Settlement Class Members (for example, a subscriber may not have had a Facebook account or may not have watched videos on Defendant's website). Fraietta Decl. ¶ 30. Still, the total subscriber figure makes clear that the Settlement Class includes at least thousands of people. *Id.* And the benefits to the Settlement Class are particularly exceptional in light of the risks involved with continued litigation (which are explained in more detail below). This factor therefore weighs in favor of the requested fee.

**2. Factor 2: Counsel for Both Parties are Highly Competent, Experienced, And Efficiently Prosecuted This Case**

Class Counsel is highly skilled and experienced in class action litigation, particularly in the consumer privacy context, and has achieved a number of exceptional results throughout the country over the last several years. *See id.* ¶ 34 and Firm Resume attached thereto. The same is

[3] It bears noting that the In Kind Relief is *in addition to* the cash relief; not in lieu of. Thus, a claiming Settlement Class Member who files a valid claim for a cash payment will also receive In Kind Relief.

true of Defendant's counsel. *Id.* ¶ 37. Drawing on that experience and expertise, Class Counsel and Defendant's counsel worked to efficiently prosecute this case through motion practice, written discovery, and ultimately mediation and settlement. Accordingly, this factor weighs heavily in favor of the requested fee.

### 3. Factor 3: This Class Action is Complex

The complex nature of this litigation favors the requested fee award. The claims and legal theories at issue are novel, complicated, and unsettled. Indeed, this was the first ever Facebook Tracking Pixel-based VPPA case filed and it produced the first ever decision on a motion to dismiss in this arena. *Id.* ¶¶ 5, 11-12; *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373 (D. Mass. Sept. 19, 2022). This litigation was thus inherently "a complex case raising difficult and in some instances novel legal issues" as well as "thorny issues of fact." *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *4. And "[c]ourts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) (awarding one-third of the $27.8 million fund where the class action "concerned relatively uncharted territory" and "cannot be considered a garden variety … class action" … "Cases of first impression generally require more time and effort on the attorney's part ... [counsel] should not be penalized for undertaking a case which may make new law, [but] appropriately compensated for accepting the challenge."). Indeed, other Facebook Tracking Pixel-based VPPA cases have failed at the motion to dismiss stage, and none have progressed to class certification, summary judgment, or trial. Fraietta Decl. ¶ 32 (citing cases). Those later stages of the litigation would present additional risks, including, but not limited to, ascertaining the class and demonstrating predominance, given different browser settings that may be utilized by *Boston Globe* subscribers, and even proving the elements of the underlying VPPA claim.

*See, e.g.*, *Ambrose*, 2022 WL 4329373, at *2 (noting that factual disputes that were inappropriate for disposition at the motion to dismiss stage could have resulted in summary judgment later on).

In addition to the legal complexities, the case also involved factual complexities, including identifying the Facebook Tracking Pixel, its operation on Defendant's website, and what data (if any) it was causing Facebook to receive. This factor favors the requested fee.

**4. Factor 4: The Risk of Non-Payment**

"Many cases recognize that the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award." *In re Lupron*, 2005 WL 2006833, at *4.[4] Class Counsel took this case on a pure contingency basis and committed substantial resources of attorney and staff time, in addition to out-of-pocket costs and expenses, towards investigating, litigating, and settling this action. Fraietta Decl. ¶ 33. In doing so, Class Counsel "bore the risk of the case being dismissed at the pretrial stage, of losing at trial, or of failing to prove damages." *In re Lupron*, 2005 WL 2006833, at *4. Indeed, Class Counsel recognizes that Plaintiff faced considerable risks in establishing class-wide liability and obtaining Rule 23 certification of the proposed class action (and perhaps opposing a motion for decertification or a Rule 26(f) petition). Fraietta Decl. ¶¶ 31-32, 36-37. Class Counsel also assumed the risk of the significant delay associated with achieving a final resolution through trial and any appeals. *Id.* ¶ 33. And even if Plaintiff and the Class won a trial an award of statutory damages was not guaranteed. *See, e.g.*, *Rogers v. BNSF Railway Co.*, 2023 WL 4297654, at *13 (N.D. Ill. June 30, 2023)

[4] "A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *In re Lupron*, 2005 WL 2006833, at *4 (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir.1990)).

(vacating jury's statutory damages award in statutory privacy class action and ordering a new trial on damages); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating and remanding district court's denial of post-trial motion challenging the constitutionality of statutory damages award in statutory privacy class action and ordering the district court to reassess the question with new appellate guidance). "Where, as here, lead counsel undertook this action on a contingency basis and faced a significant risk of non-payment, this factor weighs more heavily in favor of rewarding litigation counsel." *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *9 (D.R.I. Feb. 17, 2016); *see also Roberts*, 2016 WL 8677312, at *13 (awarding one-third and citing "the significant risk [class counsel] assumed in taking the case on a wholly contingent basis").

Moreover, given that Defendant was represented by highly sophisticated and renowned counsel, this was clearly a high-risk case whose outcome was unprecedented. Accordingly, the fee requested by Class Counsel is reasonable for a complex, high risk action such as this one.

#### 5. Factor 5: Class Counsel Dedicated Significant Time and Labor to This Case

As detailed herein and in the Fraietta Declaration, Class Counsel has dedicated substantial time, effort, and resources to bringing this complex litigation to a successful resolution. That time includes a thorough pre-suit investigation into an allegedly undisclosed practice that led to this being the first ever Facebook Tracking Pixel-based VPPA case filed. From there, Class Counsel overcame a motion to dismiss raising novel legal issues. Class Counsel then engaged a consulting expert, conducted written and document discovery, and participated in exhaustive settlement negotiations, including a mediation with Judge Maas. And since that time, Class Counsel has worked to finalize the Settlement Agreement, move for preliminary approval, effectuate the Notice program, and assist Settlement Class Members in

filing claims. Finally, Class Counsel will continue to devote significant time and resources to obtaining final approval of the Settlement and seeing the administration process to its conclusion. *See Roberts*, 2016 WL 8677312, at *13 (awarding one-third and noting that class counsel has "already committed, and anticipate continuing to commit, additional time to the administration of the claims").

Class Counsel is cognizant that this case settled at a relatively early stage of the litigation. However, the timing of this settlement does not suggest a reduced percentage fee. *See Roberts*, 2016 WL 8677312, at *13 (where case settled shortly after pleadings stage, awarding one-third of the total settlement fund based on counsel's efforts and the risk assumed in taking the case on a contingency basis); *In re Sequoia Sys., Inc. Sec. Litig.*, 1993 WL 616694, at *1 (D. Mass. Sept. 10, 1993) (awarding one-third and finding that "the speed with which relatively complex litigation has been resolved" was "a function of the quality of the counsel involved, their ability to get to the core of the case, the jugular of the case promptly, and effect a prompt resolution. That prompt resolution is a time value to the members of the class themselves."); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (declining to "penaliz[e] plaintiffs' counsel for achieving an early settlement, particularly where, as here, the settlement amount was substantial"). Indeed, as the First Circuit has explained, the "percentage of fund" method is preferable because it avoids acting as a "strong disincentive to early settlement" and instead rewards efficiency. *In re Thirteen Appeals*, 56 F.3d at 307.

It is axiomatic that Class Counsel should be rewarded rather than penalized for efficiently reaching an excellent settlement that provides immediate benefits to the Settlement Class. *See*, *e.g.*, *Maley v.Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) (awarding one-third of $11.5 million fund, noting "such efficient prosecution of plaintiffs'

claims weighs in favor of a finding of the quality of [Class Counsel's] representation here . . . [A] prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice.' In the context of a complex class action, early settlement has far reaching benefits in the judicial system."); *see also In re Nat'l Football League Players' Concussion Injury Litig.*, 2018 WL 1635648, at *5-6 (E.D. Pa. Apr. 5, 2018) (awarding over $100 million in attorneys' fees in "mega-fund" case even where the settlement "was secured without formal discovery, with limited litigation of motions, and with no bellwether trials"; because class counsel "mastered the intricacies of this case," they were able to reach a "relatively quick resolution" that allowed class members to receive compensation "as quickly as possible"); *Williamson v. MicrosemiCorp.*, 2015 WL 13650045, at *2 (N.D. Cal. Feb. 19, 2015) ("This Court will not . . . punish [attorneys] for resolving matters quickly, when such quick resolution is, as here, highly beneficial to the class. Indeed, if Class Counsel had not managed to resolve the case so quickly, the case might have bogged down in expensive and protracted litigation."); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1365 (S.D. Fla. 2011) (awarding 30% of a $410 million "mega-fund" settlement: "this is one of the occasions when an early resolution may demonstrate that the parties and their counsel are well prepared and well aware of the strength and weaknesses of their positions and of the interests to beserved by an amicable end to the case.") (quotations omitted).

And the need to reward rather than penalize efficient settlement is exacerbated in a case like this where precedent is lacking at every juncture. Simply put, Class Counsel – drawing on its experience and expertise in similar class action litigation – recognized that continued litigation may have reasonably resulted in the Settlement Class receiving nothing. Rather than risk such an adverse outcome, Class Counsel acted responsibly in negotiating an excellent

settlement with the assistance of a well-regarded former federal Magistrate Judge. This factor therefore weighs in favor of the requested fee award.

#### 6. Factor 6: The Requested Award is Aligned with Awards in Comparable Cases

Courts in this Circuit routinely award one-third of the total fund in attorneys' fees. *See supra* Argument § I.A (collecting cases in this Circuit and throughout the country awarding one-third in attorneys' fees). Class Counsel's fee request for one-third of the total fund is in line with fee awards in other complex class action settlements within this Circuit. *See id.* And it is also in line with fee awards in other privacy class actions across the country. *See, e.g.*, *Taylor v. Trusted Media Brands, Inc.*, No. 16-cv-01812-KMK, dkt. 87 (S.D.N.Y. Feb. 1, 2018) (awarding one-third of $8.225 million settlement under Michigan state analog to the VPPA where case settled before a decision on the motion to dismiss); *Moeller v. Am. Media, Inc.*, No. 16-cv-11367-JEL, dkt. 42 (E.D. Mich. Sept. 28, 2017) (awarding 35% of $7.6 million settlement under Michigan state analog to the VPPA where case settled shortly after a decision on the motion to dismiss); *Crumpton v. Octapharma Plasma, Inc.*, No. 19-cv-08402-VMK, dkt. 92 (N.D. Ill. Feb. 16, 2022) (awarding one-third of approximately $9.98 million settlement under Illinois biometric privacy law); *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. July 28, 2022) (awarding one-third of approximately $87.84 million settlement in data privacy class action and noting that "a flat percentage fee of one-third of the net common fund is typical in other data privacy settlements").

It also bears noting that this Settlement vastly outperforms the VPPA settlements and many other privacy settlements that came before it. *See, e.g.*, *Lane v. Facebook, Inc.*, 2010 WL 9013059 (N.D. Cal. Mar. 17, 2010), *aff'd* 696 F.3d 811 (9th Cir. 2012) (approving settlement in VPPA case that only provided *cy pres* relief with no monetary relief to Settlement Class

Members); *In re: Vizio, Inc., Consumer Privacy Litig.*, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (approving settlement in VPPA case that provided each claimant with an estimated $16.50 at a claims rate of 4.1%); *In re Google LLC Street View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA, dkts. 350, 369 (N.D. Cal. May 6, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach).

**7. Factor 7: Public Policy Considerations**

Public policy considerations also favor Class Counsel's fee request. There is a public interest in having experienced counsel undertake the risk of pursuing complex class actions. This is particularly true where it is unlikely that the Class Members will pursue litigation on their own for economic or personal reasons. *See Kristian v. Comcast Corp.*, 446 F.3d 25, 54 (1st Cir. 2006) ("'It would hardly be an improvement to have in lieu of this single class action 17,000,000 suits each seeking damages of $15.00 to $30.00. … The *realistic* alternative to a class action is not 17,000,000 individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.00.'") (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)).

Moreover, society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect the privacy of consumers' personal viewing habits. In fact, class action litigation in this area is the most realistic means of safeguarding the privacy of viewers under the VPPA, especially because consumers are generally unaware that their privacy rights are allegedly being violated by Defendant's utilization of the Facebook Tracking Pixel. Thus, the realistic alternative to a class action in this case would have been no enforcement at all, and Defendant's allegedly unlawful conduct would have continued unabated. This factor thus

supports the requested fee award.

## II. PLAINTIFF IS ENTITLED TO AN INCENTIVE AWARD IN THE AMOUNT REQUESTED

The Settlement states that Plaintiff may seek an incentive award of $5,000. Agreement ¶ 8.3. This incentive award is fair and reasonable in light of the time and effort Plaintiff expended for the benefit of the Class, and the risks he assumed by initiating the litigation and publicly representing the Class. Further, the award is not excessive in light of the overall Settlement Fund.

Courts recognize that named plaintiffs are "an essential ingredient of any class action" and that "an incentive award can be appropriate to encourage or induce an individual to participate in the suit." *Scovil v. FedEx Ground Package System, Inc.*, 2014 WL 1057079 *6 (D. Me. Mar. 14, 2014). Incentive awards are viewed favorably because they encourage "named plaintiffs to participate actively in class action litigation in exchange for reimbursement for their pursuits on behalf of the class overall." *Bezdek*, 79 F. Supp. 3d at 351. Plaintiff has actively pursued this litigation from the outset. His initiative, time, and effort were essential to the successful prosecution of the case. He: (1) worked with Class Counsel to investigate and develop the case; (2) participated in discovery and provided counsel with necessary documents, communications, and information; and (3) conferred with Class Counsel during the ligation and settlement negotiations. Declaration of David Ambrose In Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees ¶¶ 3-7; Fraietta Decl. ¶¶ 39-41. An incentive award is appropriate in light of the efforts made by Plaintiff to protect the interests of the other Settlement Class members, the time and effort he expended pursuing this matter, and the substantial benefit he helped achieve for the other Settlement Class members. An incentive award of $5,000 is well-deserved, reasonable, and equivalent to awards approved by other courts in this Circuit. *See Scovil*, 2014 WL 1057079 at *6 (citing a 2006 study of

incentive awards during 1993-2002 found the median incentive payment to be $4,537, with the average being $15,992). Based on the foregoing, Class Counsel respectfully request that the Court approve an incentive award of $5,000 for Plaintiff.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's application for attorneys' fees, costs, expenses, and an incentive award to the Plaintiff.

Dated: July 28, 2023

Respectfully submitted,

By: *___/s/ Philip L. Fraietta___*
Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*Pro Hac Vice*)
Philip L. Fraietta (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jarisohn@bursor.com
pfraietta @bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly (*Pro Hac Vice*)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: creilly@bursor.com

*Class Counsel*

**BIRNBAUM & GODKIN, LLP**
David S. Godkin (BBO#196530)
James E. Kruzer (BBO#670827)
1 Marina Park Drive, Suite 1410
Boston, MA 02210
Telephone: (617) 307-6100
Email: godkin@birnbaumgodkin.com
kruzer@birbnaumgodkin.com

*Local Counsel for Plaintiff and the Settlement Class*