# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DAVID AMBROSE, individually and on
behalf of all others similarly situated,

                            Plaintiff,

    v.

BOSTON GLOBE MEDIA PARTNERS,
LLC,

                            Defendant.

Civil Action No. 1:22-cv-10195-RGS

Hon. Richard G. Stearns

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Dated:  August 24, 2023

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*Pro Hac Vice*)
Philip L. Fraietta (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jarisohn@bursor.com
          pfraietta @bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly (*Pro Hac Vice*)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
Email:    creilly@bursor.com

*Class Counsel*

**BIRNBAUM & GODKIN, LLP**
David S. Godkin (BBO#196530)
James E. Kruzer (BBO#670827)
1 Marina Park Drive, Suite 1410
Boston, MA 02210
Telephone:  (617) 307-6100
Email:    godkin@birnbaumgodkin.com
         kruzer@birbnaumgodkin.com

*Local Counsel for Plaintiff and the Settlement
Class*

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ................................................................................................................ 1

I.    FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

    A.    Factual Background ................................................................................ 2

    B.    Procedural History ................................................................................. 3

    C.    History of Settlement Discussions ......................................................... 3

II.    KEY TERMS OF THE SETTLEMENT ................................................................... 4

    A.    Class Definition ..................................................................................... 4

    B.    Monetary Relief In The Form Of A Non-Reversionary Common
        Fund ....................................................................................................... 5

    C.    In Kind Relief ....................................................................................... 5

    D.    Prospective Relief .................................................................................. 5

    E.    Release .................................................................................................... 6

    F.    Notice And Administration Expenses .................................................... 6

    G.    Incentive Award, Attorneys' Fees, Costs, And Expenses ..................... 6

ARGUMENT ..................................................................................................................... 7

I.    THE COURT SHOULD CERTIFY THE CLASS FOR PURPOSES OF
    SETTLEMENT ........................................................................................................ 7

II.    THE CLASS NOTICE FULLY SATISFIED DUE PROCESS ................................. 7

III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE
    UNDER RULE 23(E) ............................................................................................... 9

    A.    The Class Representative And Class Counsel Have Adequately
        Represented The Class (Rule 23(e)(2)(A)) .......................................... 10

    B.    The Settlement Is Based On Arm's Length Negotiations
        Conducted After Extensive Investigation And The Exchange Of
        Ample Information (Rule 23(e)(2)(B)) ................................................ 11

    C.    The Settlement Provides Adequate Relief To the Class (Rule
        23(e)(2)(C)) .......................................................................................... 12

        1.    The Relief Provided By The Settlement Is Excellent ................. 12

        2.    This Is A Complex Litigation Involving Significant Risk .......... 14

        3.    The Method Of Distributing Relief To The Settlement
            Class Members Is Effective And Supports Final Approval ......... 16

        4.    The Terms Of The Requested Attorneys' Fees Are
            Reasonable ................................................................................... 17

        5.    The Settlement Agreement Is The Only Agreement Made
            In Connection With The Settlement ............................................ 17

    D.    The Settlement Treats Class Members Equally (Rule 23(e)(2)(D)) ....... 17

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ambrose v. Boston Globe Media Partners LLC*,
2022 WL 4329373 (D. Mass. Sept. 19, 2022) .................................................. 14, 15

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015) ............................................................ 9, 12

*Bezdek v. Vibram USA, Inc.*,
809 F.3d 78 (1st Cir. 2015) ....................................................................... 9

*Bussie v. Allmerica Fin. Corp.*,
50 F. Supp. 2d 59 (D. Mass. 1999) ............................................................. 11

*Gulbankian v. MW Mfrs., Inc.*,
2014 WL 7384075 (D. Mass. Dec. 29, 2014) .................................................. 11

*In re Google LLC Street View Elec. Commc'ns Litig.*,
2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ................................................. 13

*In re Lupron Mktg. & Sales Practices Litig.*,
2005 WL 2006833 (D. Mass. Aug. 17, 2005) ................................................. 14

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ............................................................ 14

*In re: Vizio, Inc., Consumer Privacy Litig.*,
2019 WL 12966638 (C.D. Cal. July 31, 2019) ................................................ 13

*Lane v. Facebook, Inc.*,
2010 WL 9013059 (N.D. Cal. Mar. 17, 2010) ................................................. 13

*Medoff v. CVS Caremark Corp.*,
2016 WL 632238 (D.R.I. Feb. 17, 2016) ....................................................... 9

*Roberts v. TJX Cos., Inc.*,
2016 WL 8677312 (D. Mass. Sept. 30, 2016) .......................................... 11, 12, 15

*Rogers v. BNSF Railway Co.*,
2023 WL 4297654 (N.D. Ill. June 30, 2023) ................................................... 15

*Rolland v. Cellucci*,
191 F.R.D. 3 (D. Mass. 2000) .................................................................... 11

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022) ................................................................... 15

**RULES**

Fed. R. Civ. P. 23 ........................................................................................................ passim

**OTHER AUTHORITIES**

Newberg on Class Actions (5th ed.) ........................................................................ 16

## INTRODUCTION

On May 25, 2023, this Court preliminarily approved the class action settlement between Plaintiff David Ambrose ("Plaintiff") and Defendant Boston Globe Media Partners, LLC ("Defendant") and directed that notice be sent to the Settlement Class (ECF No. 52).  The settlement administrator has implemented the Court-approved notice plan and direct notice has reached **98.7%** of the certified Settlement Class.  The reaction from the class has been overwhelmingly positive.  Specifically, of the 516,125 potential Settlement Class Members, **zero** have objected and only eight requested to be excluded.[1]

The Settlement's strength speaks for itself:  it creates a $4 million all-cash, non-reversionary Settlement Fund[2] from which each Settlement Class Member who files a valid Claim Form will be entitled to a *pro rata* share.  Additionally, the Settlement provides up to $1 million of In Kind Relief, which will consist of an extension of any existing digital subscription to the *Boston Globe* for a maximum of seven days past its current expiration date for no additional payment.  The In Kind Relief is available to claiming Settlement Class Members in addition to the cash relief, or as a standalone remedy, at their election.  And equally important, as part of the Settlement, Defendant has agreed to meaningful prospective relief as it has suspended operation of the Facebook Tracking Pixel on any pages on its website that both include video content and have a URL that substantially identifies the video content viewed, and will continue to do so unless and until the VPPA is amended, repealed, or otherwise invalidated, or until Defendant obtains VPPA-compliant consent for the disclosure of the video content viewed to Facebook.

---

[1] As explained in the Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Notice Plan ("Azari Decl.") submitted herewith, Epiq was originally provided with data file containing 522,145 records for potential Settlement Class Members, but after deduplication, the final count of unique potential Settlement Class Members was 515,246.  *Id.* ¶ 22.

[2] Unless otherwise indicated, all capitalized terms herein have the same meaning as ascribed to them in the "Definitions" section of the Settlement Agreement.

The Settlement is a product of a thorough pre-filing investigation, efficiently prosecuted litigation, and extensive arm's-length negotiations between the Parties, including a mediation with the Honorable Frank Maas (Ret.) – formerly of the Southern District of New York and now a mediator at JAMS (New York).  The Settlement provides fair, reasonable, and adequate relief to the Settlement Class, and its terms and notice procedures readily satisfy Due Process and the procedural requirements of Fed. R. Civ. P. 23.  For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background

Plaintiff alleges that Defendant is a "'multimedia organization that provides news, entertainment, and commentary across multiple brands and platforms.'"  (ECF No. 22) (the "FAC") ¶ 8 (quoting Defendant's press release).  According to Plaintiff, Defendant's website, bostonglobe.com, features "national and local content daily," including "news articles, photographs, images, illustrations, audio clips and video clips."  *Id.* ¶ 9.  Plaintiff further alleges that Defendant incorporates the code for the Facebook Tracking Pixel on its website, which, when activated "'tracks the people and type of actions they take.'"  *Id.* ¶ 25 (quoting Facebook's documentation).  According to Plaintiff, when a visitor navigates to bostonglobe.com, Defendant transmits certain event data to Facebook "permit[s] an ordinary person to identify what video an individual has watched."  *Id.* ¶ 32.  Plaintiff further alleges that Defendant sends this data to Facebook alongside the c_user cookie, which contains an "unencrypted Facebook ID."  *Id.* ¶ 33. 47.  Thus, Plaintiff alleges that Defendant "knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior."  *Id.* ¶¶ 52-55.  Defendant has denied, and continues to deny, many of these allegations.

### B.      Procedural History

Plaintiff filed his Amended Complaint on May 20, 2022, which is the operative complaint in this matter.  ECF No. 22.  On June 21, 2022, Defendant filed a motion to dismiss Plaintiff's Amended Complaint, which was accompanied by a 20-page memorandum of law.  ECF No. 25.  On July 19, 2022, Plaintiff filed his opposition to Defendant's motion to dismiss, which comprised of a 19-page memorandum of law.  ECF No. 28.  On August 17, 2022, Defendant filed its reply memorandum of law in support of its motion to dismiss.  ECF No. 29.

On September 19, 2022, this Court issued a Memorandum and Order denying Defendant's motion to dismiss.  ECF No. 31.  On October 12, 2022, Defendant answered the Amended Complaint by denying the allegations generally and raising nine affirmative defenses.  ECF No. 36.  Thereafter, the Parties engaged in written and document discovery, which included meet-and-confer conferences, and exchanged initial disclosures pursuant to Rule 26.  *See* Fraietta Decl. ¶ 14.

### C.      History of Settlement Discussions

Mindful that, as with any litigation, there is significant risk to both sides, from the outset of the case, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution.  Fraietta Decl. ¶ 15.  Those discussions led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before Judge Maas.  Fraietta Decl. ¶ 16.  The Parties stipulated to stay the case pending the mediation and the Court granted that stipulation on January 18, 2023.  ECF No. 39.

In advance of the mediation, the Parties exchanged informal discovery, including on the size of the potential class.  Fraietta Decl. ¶ 18.  The parties also exchanged detailed mediation statements, airing their respective legal arguments and theories on potential damages.  *Id.*  Given that this information was the same or largely similar to discovery that would be produced in

formal discovery related to class certification and summary judgment, the Parties were able to sufficiently assess the strengths and weaknesses of their cases.  *Id.* ¶ 19.

On February 8, 2023, the Parties participated in a mediation before Judge Maas.  Fraietta Decl. ¶ 20.  While the Parties engaged in good faith negotiations, which at all times were at arms' length, they failed to reach an agreement that day.  *Id.*  However, because the Parties felt they had made progress, they stipulated to extend the stay to continue their mediation efforts, which the Court granted.  ECF Nos. 41, 43, 45.  Over the next several weeks, the Parties engaged in additional rounds of arms' length negotiations facilitated by Judge Maas, and, on March 31, 2023, reached agreement on all material terms of a class action settlement and executed a term sheet.  Fraietta Decl. ¶ 21; *see also* ECF No. 46.  On May 25, 2023, the Court granted preliminary approval of the Settlement.  *Id.* ¶ 35 (citing ECF No. 52).

## II.   KEY TERMS OF THE SETTLEMENT

The key terms of the Class Action Settlement Agreement ("Settlement"), attached to the Fraietta Declaration as Exhibit 1, are briefly summarized as follows:

### A.   Class Definition

The "Settlement Class" or "Settlement Class Members" is defined as:

> [A]ll persons in the United States who, from February 5, 2020, to and through the Preliminary Approval date [May 25, 2023]: (1) have or had a Facebook account; (2) also had a digital subscription to the *Boston Globe*, or a home delivery subscription to the *Boston Globe* that includes digital access; and (3) who viewed videos on Boston Globe's website while their Facebook membership was active.[3]

Settlement ¶ 1.30.

---

[3] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

### B.    Monetary Relief In The Form Of A Non-Reversionary Common Fund

Pursuant to the Settlement, Defendant will establish a non-reversionary cash Settlement Fund in the amount of $4,000,000.   Settlement ¶ 1.32.   Settlement Class Members will be entitled to submit claims against the Settlement Fund.  *Id.* ¶ 2.1.  All Settlement Class Members who submit a valid claim will be entitled to a *pro rata* portion of the Settlement Fund after payment of Settlement Administration Expenses, attorneys' fees and costs, and any incentive award, if approved by the Court.  *Id.*

Any uncashed checks or electronic payments unable to be processed within 180 days of issuance shall revert to the Settlement Fund, to be distributed *pro rata* to claiming Settlement Class Members, if practicable.  *Id.* ¶ 2.1(e).  If such a secondary distribution would result in Settlement Class Members receiving less than $5.00, or if a secondary distribution would be otherwise infeasible, any uncashed funds will revert to a non-sectarian, not-for-profit organization, agreed upon by Class Counsel and Defendant and approved by the Court.  *Id.*  The Parties propose the American Civil Liberties Union.  Fraietta Decl. ¶ 43.

### C.    In Kind Relief

In addition to the monetary relief described above, Defendant will also provide up to $1,000,000 of In Kind Relief, in the form of an extension of any existing digital subscription to the *Boston Globe* of whatever type enjoyed by the claiming Settlement Class Member for a maximum of seven days past its current expiration date for no additional payment.  *Id.* ¶ 1.16. Settlement Class Members will have the ability to select In Kind Relief in addition to a monetary payment, or as a standalone remedy.  *Id.* ¶ 2.1(b).

### D.    Prospective Relief

As part of the Settlement, Defendant has suspended operation of the Facebook Tracking Pixel on any pages on its website that both include video content and have a URL that

substantially identifies the video content viewed, and will continue to do so unless and until the VPPA is amended, repealed, or otherwise invalidated (including by judicial decision on the use of website pixel technology by the United States Supreme Court, any federal court of appeals, a U.S. federal district court in Massachusetts, or a Massachusetts state court of general jurisdiction), or until Defendant obtains VPPA-compliant consent for the disclosure of the video content viewed to Facebook.  *Id.* ¶ 2.2.

### E.      Release

In exchange for the relief described above, the obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.  *Id.* ¶¶ 3.1-3.2.  Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them.

### F.      Notice And Administration Expenses

The Settlement Fund will be used to pay the cost of Settlement Administration Expenses, which includes sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administering the Settlement.  *Id.* ¶¶ 1.27, 1.32.

### G.      Incentive Award, Attorneys' Fees, Costs, And Expenses

In recognition for his efforts on behalf of the Settlement Class, Defendant has agreed that Plaintiff may receive, subject to Court approval, an incentive award of $5,000 from the Settlement Fund.  *Id.* ¶ 8.3.  As part of the Settlement, Defendant has also agreed that Class Counsel are entitled to reasonable attorneys' fees, costs, and expenses in an amount to be determined by the Court by petition.  *Id*. ¶ 8.1.  These awards are subject to the Court's approval, which Plaintiff has moved for separately.  *See* ECF No. 55.  On August 10, 2023, the Court

issued an Order awarding Plaintiff an incentive award of $5,000, and awarding Class Counsel attorneys' fees, costs, and expenses of $750,000.  *See* ECF No. 61.

## ARGUMENT

### I.  THE COURT SHOULD CERTIFY THE CLASS FOR PURPOSES OF SETTLEMENT

At preliminary approval, the Court certified, for settlement purposes, a Settlement Class defined as:

> [A]ll persons in the United States who, from February 5, 2020, to and through the Preliminary Approval date [May 25, 2023]: (1) have or had a Facebook account; (2) also had a digital subscription to the *Boston Globe*, or a home delivery subscription to the *Boston Globe* that includes digital access; and (3) who viewed videos on Boston Globe's website while their Facebook membership was active.[4]

ECF No. 52 ¶ 9; *see also id.* ¶ 10 (finding Rule 23 factors were satisfied and class certification was appropriate).  The Court also appointed Philip L. Fraietta, Joshua D. Arisohn, and Christopher R. Reilly of Bursor & Fisher, P.A. as Class Counsel and David Ambrose as Class Representative. *Id.* ¶ 8.  Nothing has changed since that time to warrant reconsideration, so the Court should finally certify the Settlement Class.

### II.  THE CLASS NOTICE FULLY SATISFIED DUE PROCESS

Prior to granting final approval to this Settlement, the Court must consider whether the class members received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The "best notice practicable" does not necessarily require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process.

---

[4] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

In general, a notice plan that reaches at least 70% of class members is considered reasonable. *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf. Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B).

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and Due Process.  ECF No. 52 ¶¶ 12-14.  That plan has now been fully carried out by professional settlement administrator Epiq Class Action and Claims Solutions, Inc. ("Epiq").  Pursuant to the Settlement Agreement, Defendant provided Epiq with a list of 522,145 names, email addresses, and last known U.S. mailing addresses, to the extent available, of potential Settlement Class Members.  Azari Decl. ¶ 22.  After Epiq removed duplicates, the list contained 516,125 unique potential Settlement Class Member records.  *Id.* Epiq successfully delivered the Court-approved notice via e-mail or postcard (for potential Settlement Class Members to whom e-mail could not be successfully delivered) to 509,971 unique potential Settlement Class Members.  *Id.* ¶ 29.  Accordingly, the Court-approved notice successfully reached 98.7% of the potential Settlement Class.  *Id.*[5]  These notices also directed potential Settlement Class Members to the Settlement Website, where they were able to submit claims online; access important court filings, including the Motion for Attorneys' Fees and all related documents; and see deadlines and answers to frequently asked questions.  *Id.* ¶ 30.

Given the broad reach of the notice, and the comprehensive information provided, the requirements of due process and Rule 23 are easily met.

---

[5] On May 26, 2023, Epiq also notified the appropriate state and federal officials pursuant to CAFA.  *Id.* ¶ 19.

## III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23(e)

At the final approval stage, the fairness analysis is guided by Rule 23(e), which states that a district court should approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate considering whether":

(A) The class representatives and class counsel have adequately represented the class;

(B) The proposal was negotiated at arm's length

(C) The relief provided for the class is adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed attorneys' fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[6]  All of these factors "speak to the core question of the reasonableness of the settlement in light of the uncertainties of litigation." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015).  "[T]he ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015).  The court performs this analysis in the shadow of the "strong public policy in favor of settlements," particularly in the class action context. *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *5 (D.R.I. Feb. 17, 2016).

---

[6] There are no separate agreements to be identified pursuant to Rule 23(e)(3).  Fraietta Decl. ¶ 34.

At the preliminary approval stage, this Court held that, "subject to the Final Approval Hearing, the Settlement Agreement is fair, reasonable, and adequate, within the range of possible approval, and in the best interests of the Settlement Class."  ECF No. 52 ¶ 4.  This Court should grant final approval and find the Settlement is fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e).

### A. The Class Representative And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A))

Class Counsel and the Class Representative have adequately and vigorously represented the Class.  There are no conflicts between the Class Representative and the Class.  Throughout the pendency of this action, the Class Representative has adequately and vigorously represented his fellow Class Members.  He: (1) worked with Class Counsel to investigate and develop the case; (2) participated in discovery and provided counsel with necessary documents, communications, and information; and (3) conferred with Class Counsel during the ligation and settlement negotiations.  Declaration of David Ambrose In Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees ¶¶ 3-7; Fraietta Decl. ¶¶ 39-41.

Likewise, Class Counsel worked vigorously to protect the interests of the class.  First, the immense amount of investigation and discovery (both formal and informal) taken by Class Counsel ensured that they had adequate information to assess the strength of the case and engage in settlement discussions.  For example, Class Counsel engaged in formal and informal discovery and in motion practice on the motion to dismiss.  During settlement discussions, Defendant provided informal discovery to Class Counsel regarding the size and composition of the Settlement Class, giving Class Counsel the information necessary to negotiate the Settlement.  Moreover, Class Counsel at Bursor & Fisher, P.A. have extensive experience litigating and settling class actions.  *See* Fraietta Decl. Ex. 2 (Firm Resume).  Thus, Counsel's recommendation

10

that the Settlement is favorable to the Class is entitled to significant weight. *Gulbankian v. MW Mfrs., Inc.*, 2014 WL 7384075, at *3 (D. Mass. Dec. 29, 2014) ("Class Counsel here are attorneys with extensive experience in consumer and building product class action litigation, and they insist that this Agreement is fair, reasonable and adequate. I give significant weight to this representation."); *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate.").

### B. The Settlement Is Based On Arm's Length Negotiations Conducted After Extensive Investigation And The Exchange Of Ample Information (Rule 23(e)(2)(B))

The Parties engaged in a private mediation with the Honorable Frank Maas (Ret.), an experienced and renowned mediator to assist them in reaching the Settlement.  Following this mediation session, the Parties reached the Settlement though several weeks of additional negotiations and other extensive communications facilitated by Judge Maas.  Fraietta Decl. ¶¶ 20-21.  Where, as here, the Settlement is the product of mediation with an experienced mediator, there is a presumption of fairness and arm's length negotiations. *See, e.g.*, *Roberts v. TJX Cos., Inc.*, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) ("the participation of an experienced mediator[] also supports the Court's finding that the Settlement is fair, reasonable, and adequate.").

Additionally, the Parties have exchanged sufficient information "to make an intelligent

judgment about settlement." *Bezdek*, 79 F. Supp. at 348.  Indeed, the Parties investigated the facts underlying Plaintiff's allegations before and during this litigation.  Fraietta Decl. ¶¶ 4-5; 14; 18-19.  Defendant also provided information pertaining to the class size in advance of the mediation.  *Id*.  The Parties exchanged further information through written correspondence; phone calls; detailed mediation statements and exhibits submitted by the Parties; and mediation.

Thus, "the parties exchanged sufficient information over the course of the mediation process to ensure that both sides were making an informed decision regarding the adequacy of the settlement." *Roberts*, 2016 WL 8677312, at *5.

### C.  The Settlement Provides Adequate Relief To the Class (Rule 23(e)(2)(C))

#### 1.  The Relief Provided By The Settlement Is Excellent

The Settlement provides outstanding monetary relief for the Settlement Class and excels when compared to other class action settlements, including other VPPA settlements.  The Settlement creates a $4 million all-cash, non-reversionary Settlement Fund, plus up to an additional $1 million of In Kind Relief.  Agreement ¶¶ 1.16; 1.32.  Settlement Class Members have until October 23, 2023 to submit a claim.  ECF No. 52 ¶ 15.  As of August 23, 2023, Epiq has received 10,535 Claim Forms.  Azari Decl. ¶ 36.  This number is sure to increase as the Claims Deadline approaches as the Settlement provides for reminder notices to be sent to the Settlement Class 60, 30 and 7 days prior to the Claims Deadline.  Agreement ¶ 4.1(d); Azari Decl. ¶ 37.  But even current claiming rates indicate high participation from the Settlement Class.  It is important to note that although the notice list included 516,125 unique *potential* Settlement Class Members (i.e., digital subscribers to the *Boston Globe* during the class period) the Parties agree that the Settlement Class is likely significantly smaller.  Fraietta Decl. ¶ 29.  That is because in order to be a Settlement Class Member, in addition to having a digital subscription to the *Boston Globe*, one must:  (1) have or had a Facebook account; and (2) viewed

videos on Boston Globe's website while one's Facebook membership was active.  ECF No. 52 ¶ 9 (class definition).  While the Parties do not have precise data, they do have proxies by which to suggest the actual size of the Settlement Class is significantly smaller.  First, publicly available data shows that only about 70% of Americans had a Facebook account as of 2021.  Fraietta Decl. ¶ 27.  Second, information provided by Defendant in informal discovery showed that the *Boston Globe* published less than 1 video per day on its website during the class period, on average. Fraietta Decl. ¶ 28.

Nonetheless in light of the available data, the Parties took a conservative approach and strived to provide notice to all digital subscribers to the *Boston Globe* and Class Counsel provided conservative payment estimates to account for the unlikely possibility that a larger portion of the 516,125 unique potential Settlement Class Members were actual Settlement Class Members.  At current claiming rates, however, Class Counsel estimates that each claimant will receive approximately $289, although that figure will change as more Settlement Class Members file claims and as Epiq validates the claims.  Regardless, even the $20-$40 conservative estimate for claimant payments represents an excellent outcome for the Settlement Class, particularly in comparison with other VPPA and privacy settlements.  *See, e.g.*, *Lane v. Facebook, Inc.*, 2010 WL 9013059 (N.D. Cal. Mar. 17, 2010), *aff'd* 696 F.3d 811 (9th Cir. 2012) (approving settlement in VPPA case that only provided *cy pres* relief with no monetary relief to Settlement Class Members); *In re: Vizio, Inc., Consumer Privacy Litig.*, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (approving settlement in VPPA case that provided each claimant with an estimated $16.50 at a claims rate of 4.1%); *In re Google LLC Street View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *11-14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA,

dkts. 350, 369 (N.D. Cal. May 6, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach).

Finally, the non-monetary benefits created by the Settlement add significant value for Settlement Class Members and further warrant approval. As a result of the Settlement, Defendant has suspended operation of the Facebook Tracking Pixel on any pages on its website that both include video content and have a URL that substantially identifies the video content viewed, and will continue to do so unless and until the VPPA is amended, repealed, or otherwise invalidated (including by judicial decision on the use of website pixel technology by the United States Supreme Court, any federal court of appeals, a U.S. federal district court in Massachusetts, or a Massachusetts state court of general jurisdiction), or until Defendant obtains VPPA-compliant consent for the disclosure of the video content viewed to Facebook. *Id.* ¶ 2.2.

At bottom, both the monetary and prospective relief secured here are excellent and should be approved.

### 2. This Is A Complex Litigation Involving Significant Risk

The complexity, expense, and likely duration of this case clearly favors approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(i) (at final approval, courts should take into account "the costs, risks, and delay of trial and appeal"); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007) (considering "risk, complexity, expense and duration of the case"). The claims and legal theories at issue are novel, complicated, and unsettled. Indeed, this was the first ever Facebook Tracking Pixel-based VPPA case filed and it produced the first ever decision on a motion to dismiss in this arena. *Id.* ¶¶ 5, 11-12; *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373 (D. Mass. Sept. 19, 2022). This litigation was thus inherently "a complex case raising difficult and in some instances novel legal issues" as well as "thorny issues of fact." *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *4; s*ee also Tyco*, 535 F.

Supp. 2d at 260 (finding this factor satisfied where it was "a risky case for both sides" due to "an uncertain legal   environment" and a case theory that put plaintiffs "at the cutting edge of a rapidly changing" and "still-developing" area of law).   Indeed, other Facebook Tracking Pixel-based VPPA cases have failed at the motion to dismiss stage, and none have progressed to class certification, summary judgment, or trial.   Fraietta Decl. ¶ 32 (citing cases).   Those later stages of the litigation would present additional risks, including, but not limited to, ascertaining the class and demonstrating predominance, given different browser settings that may be utilized by *Boston Globe* subscribers, and even proving the elements of the underlying VPPA claim.   *See, e.g.*, *Ambrose*, 2022 WL 4329373, at *2 (noting that factual disputes that were inappropriate for disposition at the motion to dismiss stage could have resulted in summary judgment later on).   And even if Plaintiff and the Class won a trial an award of statutory damages was not guaranteed.   *See, e.g.*, *Rogers v. BNSF Railway Co.*, 2023 WL 4297654, at *13 (N.D. Ill. June 30, 2023) (vacating jury's statutory damages award in statutory privacy class action and ordering a new trial on damages); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating and remanding district court's denial of post-trial motion challenging the constitutionality of statutory damages award in statutory privacy class action and ordering the district court to reassess the question with new appellate guidance).

In addition to the legal complexities, the case also involved factual complexities, including identifying the Facebook Tracking Pixel, its operation on Defendant's website, and what data (if any) it was causing Facebook to receive.   Thus, discovery in this case would likely be protracted, expensive, and burdensome.   Absent settlement, "the parties would need to … take time-consuming depositions, and engage in motion practice related to class certification and summary judgment, all before preparing for what would likely be a lengthy trial.   The proposed Settlement avoids the significant time and expense that they would incur

preparing this case for trial on the merits." *Roberts*, 2016 WL 8677312, at *6.  Thus, the risk, complexity, expense, and duration all weigh in favor of approving the Settlement.

> **3.      The Method Of Distributing Relief To The Settlement Class Members Is Effective And Supports Final Approval**

The "effectiveness of [the]…method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg on Class Actions § 13:53 (5th ed.). Settlement distribution here is straightforward.  Settlement Class Members may submit a claim by mail or online.  Settlement Class Members will be given the option of receiving a digital payment or a traditional paper check.  Once the Settlement is approved, Epiq will distribute settlement payments to each Settlement Class Member who submitted a valid claim for their *pro rata* portion of the respective funds.  If, after 180 days of issuance, any electronic payments are unable to be processed or any checks go uncashed, those residual funds will revert to the Settlement Fund and will then be distributed *pro rata* to Settlement Class Members, if feasible. Agreement ¶ 2.1(e).  If such a secondary distribution would result in Settlement Class Members receiving less than $5.00, or if a secondary distribution would be otherwise infeasible, any uncashed funds will revert to a non-sectarian, not-for-profit organization, agreed upon by Class Counsel and Defendant and approved by the Court.  *Id.*  The Parties propose the American Civil Liberties Union.  Fraietta Decl. ¶ 43.  This well-recognized method of distributing monetary relief fully satisfies this aspect of Rule 23(e)(2)(C)(ii).

**4.    The Terms Of The Requested Attorneys' Fees Are Reasonable**

The third sub-factor considers the adequacy of the relief provided to the class taking into account "the terms of [the] proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii).

Class Counsel petitioned the Court for an award of reasonable attorneys' fees after the Settlement Class received Notice.  ECF No. 55.  The Settlement's contemplated method of calculating attorneys' fees (i.e., the percentage-of-the-fund method) was reasonable.  Agreement ¶ 8.1.  The Court has already addressed the motion and has awarded Class Counsel $750,000 in attorneys' fees, costs, and expenses.  ECF No. 61.  If approved, the Settlement allows Class Counsel to elect to be paid their portion of attorneys' fees within ten days after the Court's entry of a final approval order.  Agreement ¶ 8.2.  These terms are reasonable and should be approved.

**5.    The Settlement Agreement Is The Only Agreement Made In Connection With The Settlement**

Rule 23(e)(2) requires the identification of "any agreement made in connection with the settlement." Fed. R. Civ. P. 23(e)(2), (3).  Here, there are no agreements other than the Settlement Agreement.  Fraietta Decl. ¶ 42.

**D.    The Settlement Treats Class Members Equally (Rule 23(e)(2)(D))**

Finally, Rule 23(e)(2)(D) requires the proposed settlement to treat class members "equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  The Settlement Class Members are treated equitably.  Since every Settlement Class Member here has alleged nearly identical VPPA claims, (and the case was settled before it could be determined factually whether any of the class members' computers functioned differently with respect to the Facebook pixel), each approved claimant is entitled to a *pro rata* share of the Settlement Fund, after fees and costs are paid.  Agreement ¶ 2.1.  Each approved claimant is also entitled to identical In Kind Relief. *Id.*

And, as a result of the Settlement, Defendant has suspended operation of the Facebook Tracking Pixel on any pages on its website that both include video content and have a URL that substantially identifies the video content viewed, and will continue to do so unless and until the VPPA is amended, repealed, or otherwise invalidated (including by judicial decision on the use of website pixel technology by the United States Supreme Court, any federal court of appeals, a U.S. federal district court in Massachusetts, or a Massachusetts state court of general jurisdiction), or until Defendant obtains VPPA-compliant consent for the disclosure of the video content viewed to Facebook.  *Id.* ¶ 2.2.  Because the Settlement treats each Settlement Class Member equitably, this factor is fully satisfied.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Motion for Final Approval of the Settlement and enter Final Judgment in the form submitted herewith.

Dated:  August 24, 2023                              Respectfully submitted,

By:      */s/ Philip L. Fraietta*
         Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*Pro Hac Vice*)
Philip L. Fraietta (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jarisohn@bursor.com
          pfraietta @bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly (*Pro Hac Vice*)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
Email:    creilly@bursor.com

*Class Counsel*

**BIRNBAUM & GODKIN, LLP**
David S. Godkin (BBO#196530)
James E. Kruzer (BBO#670827)
1 Marina Park Drive, Suite 1410
Boston, MA 02210
Telephone:  (617) 307-6100
Email:    godkin@birnbaumgodkin.com
              kruzer@birbnaumgodkin.com

*Local Counsel for Plaintiff and the Settlement Class*